PARIENTE, J. The issue in this case is whether trial courts may apply a contingency fee multiplier to an award of attorney’s fees to a prevailing party only in “rare” and “exceptional” circumstances, as the Fifth District Court of Appeal held in Federated National Insurance Co. v. Joyce, 179 So.3d 492 (Fla. 6th DCA 2015). Petitioners, the insureds in a successful dispute with their homeowners’ insurance earner, assert that the Fifth District’s opinion misapplied our precedent from Florida Patient’s Compensation Fund v. Rowe, 472 So.2d 1146 (Fla. 1985), and its progeny. We have jurisdiction. See art. V, § 3(b)(3), Fla. Const. We agree with Petitioners and conclude that the. Fifth District erred by imposing a “rare” and “exceptional” circumstances requirement before a'trial court may apply a contingency fee multiplier. We reaffirm our decisions regarding'the requirements for the application of a contingency fee multiplier in Rowe, 472 So.2d 1146, Standard Guaranty Insurance Co. v. Quanstrom, 666 So.2d 828 (Fla. 1990), and Bell v. U.S.B. Acquisition Co., 734 So.2d 403 (Fla. 1999). Accordingly, we. quash the Fifth District’s decision. FACTS William and Judith Joyce, an elderly retired couple, filed a claim for insurance benefits with their homeowners’ insurance carrier, Federated. National Insurance Company (“Federated National”), following water damage to their home. Joyce, 179 So.3d at 493. Federated National denied coverage on the basis of alleged material misrepresentations made by the Joyces in the application process—namely, that the Joyces failed to disclose certain losses they had with their previous carrier. Id. The Joyces hired an attorney on a contingency fee basis = because they could not afford an attorney at an hourly rate and filed suit against Federated- National alleging .that the insurer .wrongfully denied their, claim. After months , of litigation, Federated National finally agreed to settle the claim. The parties stipulated that the Joyces were entitled to recover reasonable attorney’s fees. The Joyces’ right to recover attorney’s fees, is derived from section 627.428, Florida Statutes (2014), a. fee-shifting. statute which .authorizes an awarcl of attorney’s fees only, to an insured and provides, in relevant part: (1) Upon the rendition.of a. judgment or decree by any of the courts of this state against an insurer and in favor of any named or omnibus insured or the named beneficiary under a policy or contract executed by the insurer, the trial court or, in the event of an appeal in which the insured or beneficiary prevails, the appellate court shall adjudge or decree against the insurer and in favor of the insured or beneficiary a reasonable sum as fees or compensation for the insured’s or beneficiary’s attorney prosecuting the suit in which the recovery -is had. At the fee hearing, the trial court heard testimony from the -Joyces’ attorney and fee expert and Federated National’s fee expert. The trial court also examined certain evidence exhibits, including time records for the Joyces’ attorney and a copy of the contingency fee agreement. After the hearing, the trial court awarded the Joyces $76,300 in attorney’s fees, using a two-step process. First, the court calculated the “lodestar” amount—the number of hours reasonably incurred by the Joyces’ attorney, multiplied by a reasonable hourly rate—as being $38,150, or 109 hours reasonably expended at a reasonable hourly rate of $350. In determining the lodestar amount, the trial court noted that it reviewed and considered the factors set -forth in Florida Rule of Professional Conduct 4-1.5, in accordance with this Court’s decisions in Rowe and Quanstrom. Second, the trial court applied a contingency fee multiplier of 2.0 to the lodestar amount. In doing so, the trial court analyzed the following factors set forth in Quanstrom for determining whether a contingency fee multiplier is warranted: (1) whether the relevant market requires a contingency fee multiplier to obtain competent counsel; (2) whether the attorney was able to mitigate the risk of nonpayment in any way; and (3) whether any of'the factors set forth in Rowe are applicable, especially the amount involved, the results obtained, and the type of fee arrangement between the attorney and his' client. See Quanstrom, 555 So.2d at 834. As to the first Quanstrom factor—the “relevant market”—the trial court relied on testimony- from the Joyces’ attorney and their fee expert that both were unaware of any other attorneys in St. Johns County who specialized in representing first-party plaintiffs against their respective insurance companies. The trial court also observed that the Joyces’ fee expert testified that a contingency fee multiplier was necessary to obtain competent counsel, based on the expert having “interviewed attorneys that accept claims against insurance companies where claims have been denied.” The trial court cited to testimony from the Joyces’ attorney that she took the Joyces’ case with the “hope and expectation” that, should she be successful, the court would award a contingency fee multiplier when calculating her attorney’s fees. She further testified that she would not have taken the case without that possibility because it would not have been economically feasible. Because she often fails to recover some or all of the fees owed on cases, the Joyces’ attorney testified that the possibility of a contingency fee multiplier is critical in her decision whether to accept this type of case. The trial court concluded that “there are few or no other attorneys who undertake this work who have offices in the St. Augustine area,” and the Joyces would likely not have found another competent attorney in that area who would have agreed to take the case “without the possibility of a contingency fee multiplier.” Likewise, the trial court explained, citing Massie v. Progressive Express Insurance Co., 25 So.3d 584, 585 (Fla. 1st DCA 2009), that use of a multiplier in this case is supported by “[ejxpert testimony that a party would have difficulty securing counsel without the opportunity for a multiplier.” As to the second Quanstrom factor, the trial court found that the Joyces’ attorney could not have mitigated the risk of nonpayment. The court relied on testimony from the Joyces’ attorney that the Joyces told her they could not pay a retainer, as well as testimony from the Joyces’ fee expert that there was no meaningful way to have mitigated the risk of nonpayment in this case. As to the third Quanstrom factor, the trial court found that the Rowe factors were present, including the amount involved, the results obtained, and the type of fee arrangement. Although the amount involved “was not exceptionally large,” it was material to the Joyces and the results favored the Joyces. Also, the trial court observed that “these cases are difficult” and involve “complex” issues, including “policy interpretation, application of exclusion language; agency law, and other issues.” Finally, the trial court explained that, based on the testimony, “this was a complex commercial case, with serious consequences to the [Joyces], especially after Federated [National] submitted a proposal for settlement.” The trial court concluded in its order that a multiplier of 2.0 was appropriate because “the likelihood of success- at the outset was even at best.” .The trial court relied on the following language from Quanstrom: If the trial court determines that success was more likely than not at the outset, it may apply a multiplier of 1 to 1.5; if the trial court determines that the likelihood of success was approximately even at the outset, the trial judge may apply a multiplier of 1.5 to 2.0; and if the trial court determines that success was unlikely at the outset of the case, it may apply a multiplier of 2.0 to 2.5. 555 So.2d at 834. Federated. National appealed both the trial court’s calculation of the lodestar amount and its use of the-contingency fee multiplier. On appeal, the Fifth District affirmed the lodestar amount but reversed the trial court’s use of a contingency fee multiplier,. concluding that the federal lodestar approach includes “a- ‘strong presumption’ that the lodestar represents the ‘reasonable fee.’” Joyce, 179 So.3d at 493 (quoting Progressive Express Ins. Co. v. Schultz, 948 So.2d 1027, 1030 (Fla. 5th DCA 2007)). The Fifth District also quoted State Farm Florida Insurance Co. v. Alvarez, 175 So.3d 352 (Fla. 3d DCA 2015), which cited to the United States Supreme Court case of Perdue v. Kenny A. ex rel. Winn, 559 U.S. 542, 544, 130 S.Ct. 1662, 176 L.Ed.2d 494 (2010), for the proposition that a contingency fee .multiplier is to be used only in “ ‘rare’ and ‘exceptional’ circumstances.” Joyce, 179 So.3d at 494. Lastly, the Fifth District concluded, in contradiction to the trial court that heard the testimony at the evidentiary hearing, that this case was not complex and that the Joyces had no trouble finding an attorney to represent them. Id. This Court accepted review based on conflict with our precedent regarding the application of contingency fee multipliers. ANALYSIS We begin with an analysis of the relevant jurisprudence from this Court and the United States Supreme Court to understand the interplay between our jurisprudence and that of the United - States Supreme Court regarding contingency fee multipliers. We then explain why we continue to adhere to our precedent, which does not utilize a “rare” and “exceptional” requirement before a trial court may apply a contingency fee ‘multiplier. We further explain why we reject the United States Supreme Court precedent, which has eliminated a contingency fee multiplier to attorney’s. fees awards-under federal statutes. ■ ! - ⅜ This Court first addressed contingency fee multipliers in 1985 in Rowe, a medical malpractice' case involving "section 768.56, Florida Statutes (1981), which provided for a prevailing party award of a “reasonable attorney’s fee.” Rowe, 472 So.2d at 1146. Rowe “adopt[ed] the'federal lodestar approach for computing reasonable attorney fees;” id., in part dué- to “a perceived lack of objectivity and uniformity in court-determined reasonable attorney fees.” Id. at 1149. Rowe noted that' although each case would turn on its own facts, it was imperative “to articulate specific guidelines to aid trial judges .in the setting of attorney fees.” Id. at’ 1150. In other words, the federal lodestar approach was to “provide[] a suitable foundation for an objective structure.” Id. Rowe established the eight criteria set forth in Disciplinary Rule 2-106(b) of the Florida Bar Code of Professional Responsibility as the criteria to be considered in determining reasonable attorney’s fees. Those criteria, which Rowe noted were essentially the same as those considered by federal courts at the time, are: (1) The time and labor required, the novelty and difficulty of the question involved, and the skill requisite to perform the legal service properly. (2) The likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer. (3) The fee customarily charged in the locality for similar legal services. (4) The amount involved and the results obtained. (5) The time limitations imposed by the client or by the circumstances. • (6) The nature and length of the professional relationship with the client. (7) The experience, reputation, and ability of the lawyer or iawyers performing the' services. (8) Whether the fee is fixed or contingent. Id. at 1150 & n.5. The eight criteria now found in Rule of Professional Conduct 4-1.5 are substantially similar to those addressed in Rowe. Under Rowe, a trial court must first determine the lodestar amount, which is the number of attorney iiours reasonably expended multiplied by a reasonable hourly rate. Id. at 1150-51. In calculating the hourly rate, the trial court should look to all eight Rowe factors except “the ‘time and labor required,’ the ‘novelty and difficulty of the question involved,’ the ‘results . obtained,’ and ‘[wjhether the fee is fixed or contingent.’"[1] Id. The trial court must set forth “specific findings” as, to its determination of the number of hours, the hourly rate, and any reduction or enhancement factors. Id. at 1151. The- trial court may then adjust the lodestar amount based upon “a- ‘con-tingéncy risk’ factor and the ‘results obtained.’ ” Id, Rowe ■ noted that the contingency risk factor (contingency fee multiplier) is a factor that trial courts “must consider when awarding a statutorily-directed reasonable attorney fee.” Id. Rowe also established certain caps, depending on the fee arrangement, and set a range for the multiplier of 1.5 to 3.0, depending upon the “likelihood of success” at the outset of the case. Id. If a trial court adjusts the lodestar amount, “it must state the grounds on which it justifies the enhancement or reduction.” Id. Nowhere in Rowe did this Court state that the lodestar amount includes “a strong presumption” of reasonableness which may only be overcome in “rare and exceptional circumstances.” See Joyce, 179 So.3d at 493-94. Rather, Rowe indicated that the federal lodestar approach provided a "suitable foundation,” that -trial courts “must consider” a contingency fee multiplier, and, “when-appropriate,” the trial judge may adjust the fee on the basis of a contingency fee multiplier, .provided that he or she sets forth- specific findings. 472 So.2d at 1150-51. Thus, the Fifth District’s opinion in Joyce incorrectly interpreted this Court’s holding of Rowe. Five years after deciding Rowe, this Court reexamined Rowe in Quanstrom, a case involving section 627,428, Florida Statutes (1987)—the same statutory provision at issue in this case. Quanstrom reexamined Rowe for two reasons. First, the United States Supreme Court had subsequently issued two decisions involving contingency . fee multipliers—Blanchard v. Bergeron, 489 U.S. 87, 109 S.Ct. 939, 103 L.Ed.2d 67 (1989), and Pennsylvania v. Delaware Valley Citizens’ Council for Clean Air, 483 U.S. 711, 107 S.Ct. 3078, 97 L.Ed.2d 585 (1987). See Quanstrom, 555 So.2d at 829. Second, there was confusion as to whether trial courts were required to impose a contingency fee multiplier after Rowe. Id. at 829, 831. Quanstrom first examined the United States Supreme Court’s decision in Delaware Valley, involving the award of attorney’s fees to the prevailing party pursuant to § 304(d) of the Clean Air Act, 42 U.S.C. § 7604(d). Quanstrom noted that although the United States Supreme Court in Delaware Valley “unanimously rejected that portion of the lodestar approach pertaining to the contingency -fee multiplier,” the Court could not agree on how to account for the risk of nonpayment. Id at 831. Quanstrom also noted that Delaware Valley was a plurality opinion with four dissenting justices who advocated “a market approach,” which considered various factors, including “whether the attorney was able to mitigate the risk of nonpayment in any way.” Id. (citing Delaware Valley, 483 U.S. at 747, 107 S.Ct. 3078 (Blackmun, J., dissenting)). In Delaware Valley, the plurality analyzed why, based on the facts'of the case, a contingency fee multiplier was inappropriate, even if the fee-shifting statute otherwise permitted risk enhancement. See Delaware Valley, 483 U.S. at 728, 107 S.Ct. 3078. One reason was that “[bjefore adjusting for risk assumption, there should be evidence in the record, and the trial court should so find, that without risk enhancement plaintiff would have faced substantial difficulties in finding counsel in the local or other relevant market.” Id. at 731, 107 S.Ct. 3078 (emphasis added). The Court found no such “relevant market” findings in the record. Id. The Quanstrom Court also noted Justice O’Connor’s concurring opinion in Delaware Valley, which advocated for an examination of how the local market compensates for contingency cases as a class, and in which •she',agreed with the plurality that no risk enhancement is proper unless .the prevailing party “would have faced substantial difficulties in finding counsel in the local or other relevant market.” See Quanstrom, 555 So.2d at 831-32 (citing Delaware Valley, 483 U.S. at 733, 107 S.Ct. 3078 (O’Connor, J., concurring in part and concurring in the judgment)). Next, the Quanstrom Court examined the United States Supreme Court’s decision in Blanchard, which involved attorney’s fees in the context of a public policy enforcement case brought under 42 U.S.C. § 1983.[2] Quanstrom interpreted Blanchard as holding that “a contingency fee arrangement between a plaintiff and his counsel is only one factor to be considered and cannot, standing alone, limit the trial judge’s discretion in setting a reasonable fee.” Quanstrom, 555 So.2d at 832. Significantly, this Court in Quanstrom “reaffirm[ed] ... Rowe concerning the lodestar approach as the basic starting point” but recognized a need to modify the use of contingency fee multipliers to better accommodate the use of contingency fee multipliers in different types of cases. Id at 833. In doing so Quanstrom separated attorney’s fees cases into the following three categories: (1) public policy enforcement cases; (2) tort and contract claims; and (3) family law, eminent domain, and estate and trust matters, each with a separate means of determining the appropriate amount of attorney’s fees. Id. In category one cases, the fact that the case was taken on the basis of a contingency fee is “but one of [twelve enumerated] factors to be considered” in assessing the appropriate amount of attorney’s fees. Id. at 834. In category three cases, which are calculated using the lodestar amount, this Court held that a contingency fee multiplier is generally “not justified.” Id. at 835. As to category two, which applies to insurance coverage disputes, reasonable attorney’s fees are calculated using the two-step approach that the trial court used in this case. With respect to the availability of a contingency fee multiplier, Quanstrom “reaffirm[ed] the principles set forth in Rowe” for calculating the lodestar amount and the Court then set forth the following three factors for trial courts to consider in determining the necessity of a contingency fee multiplier: “(1) whether the relevant market requires a contingency fee multiplier to obtain competent counsel; (2) whether the attorney was able to mitigate the risk of nonpayment in any way; and (3) whether any of the factors in Rowe are applicable, especially, the amount involved, the results obtained, and the type of fee arrangement between the attorney and his client.” Id. at 834. Quanstrom observed that “the multiplier is still a useful tool which can assist trial courts in determining a reasonable fee in this category of cases when a risk of nonpayment is established,” and “the criteria and factors utilized in these cases must be consistent with the purpose of the fee-authorizing statute or rule.” Id. Lastly, Quanstrom reiterated the caps established in Rowe and lowered the multiplier range to 1.0 to 2.5 (down from the 1.5 to 3.0 range established in Rowe). Id. In short, Quanstrom made clear that trial judges are not required to use a multiplier; but when they do, evidence must be “presented to justify the utilization of a multiplier.” Id. Although the Quanstrom opinion did use the terms “rare” and “extraordinary,” they were not used as a prerequisite to the application of a contingency fee multiplier: We have identified these categories to illustrate that different criteria for different types of cases must be considered in calculating attorney’s fees. We emphasize that the principles to be utilized in computing these fees must be flexible to enable the courts to consider rare and extraordinary cases with truly special circumstances. Id. at 835 (citing State Farm Fire & Cas. Co. v. Palma, 555 So.2d 836 (Fla. 1990)). Federated National and the Fifth District misconstrue this language from Quan-strom as holding that the multiplier itself was only to be used in rare and extraordinary circumstances. Rather, Quanstrom was referring to preserving flexibility in terms of the overall framework—for example, the different criteria for different categories of cases—for computing fees in those rare and extraordinary cases which might otherwise be pigeonholed into a particular category or which may yield a much smaller fee amount than would otherwise be reasonable. On the same day this Court decided Quanstrom, it also decided Palma, 555 So.2d 836, another case involving the calculation of reasonable attorney’s fees under section 627.428, Florida Statutes. Palma held that the trial court properly applied 'a contingency fee multiplier of 2.6, resulting in an award of attorney’s fees in the amount of $253,500, in a case where the amount in dispute was only $600. 555 So.2d at 836-37. In Palma, the insurance company denied a claimed expense for a particular medical examination and used the case to establish nationwide precedent because the medical procedure was becoming more widely used. The result was a lengthy trial with testimony from multiple medical professionals. Moreover, three expert witnesses testified as to the reasonableness of the 650 hours spent by plaintiffs attorney, as well as the $150 hourly rate. Id. at 838. Palma upheld the application of the contingency fee multiplier and the trial judge’s application of the Rowe factors, noting that the case was an “illustration of the need for flexibility to- allow for this type of unique and rare case, especially where the prevailing party has not been the primary cause of the extensive litigation.” Id. (emphasis added). Again, this Court’s use of the term “rare” was a referen.ce not to the use of the multiplier itself: but rather to the need for flexibility in certain cases with respect to the application of the factors considered in determining the amount of the multiplier. This Court again recognized the validity of the contingency fee multiplier when it decided Lane v. Head, 566 So.2d 508 (Fla. 1990), as well as Sun Rank of Ocala v. Ford, 564 So.2d 1078 (Fla. 1990). In Lane, this Court was asked to decide “whether a trial court should apply the ‘lodestar’ formula, ... to enhance customary attorney’s fees when the client and attorney have agreed to make those fees only partially contingent on the outcome of the case.” 566 So.2d at 509. This Court held in the affirmative, finding that trial courts have the discretion to apply a multiplier in partially contingent cases, but not the same level of enhancement as in fully contingent cases. Id. at 510-11. Lane noted the policy reasons in support of its holding: Attorneys should be encouraged to take cases based on a partial contingency-fee arrangement, since this policy also will encourage attorneys to provide services to persons who otherwise could not afford the customary legal fee. No incentive would exist under the approach1 taken by the district court below, because no “enhancement” of the customary fee would be given to offset losses. Id. at 511. In Sun Bank, the issue was whether a commercial bank was entitled to a contingency fee multiplier as the prevailing party in an action on a promissory note, given that the agreement with its attorney was a partial contingency fee agreement. Sun Bank, 564 So.2d at 1079. The Court again recognized that the contingency fee’ multiplier may apply in partial contingency fee arrangements but held that the trial court’s use of a contingency fee multiplier was erroneous because “commercial banks have [no] difficulty finding attorneys to represent them.” Id Sun Bank cited specifically to the United States Supreme Court’s plurality opinion in Delaware Valley, stating: “Before adjusting for risk assumption, there should be evidence in the record, and the. trial court should so find, that without risk-enhancement plaintiff. would have faced substantial difficulties in finding counsel in the local or other relevant market.” Id (citing Delaware Valley, 483 U.S. at 731, 107 S.Ct. 3078). In 1992, the United States Supreme Court revisited ■ the issue of contingency fee multipliers under fee-shifting statutes in Burlington v. Dague, 506 U.S. 557, 112 S.Ct. 2638, 120 L.Ed.2d 449 (1992), concluding that “enhancement for. contingency [was] not permitted under, the fee-shifting statutes at issue,” Id at 567, 112 S.Ct. 2638. Justice Scalia, writing for the majority, reasoned that enhancement for contingency “would likely duplicate in substantial part factors already subsumed in the lodestar,” id. at 562, 112 S.Ct. 2638, and would “make, the setting of fees more complex and arbitrary.” Id. at 566, 112 S.Ct. 2638. Pague also rejected the “relevant market” factor approach articulated by Justice O’Connor in Delaware Valley, summarily concluding that it did “not see how it can intelligibly be applied.” Id. at 563, 112 S.Ct. 2638. In 1999, without referencing Pague, this Court decided Bell, reaffirming our precedent that contingency fee multipliers can be applied even when the sole basis for the fees is the parties’ contract (as opposed to a statute), “so long as the evidence supports, the need.” See Bell, 734 So.2d at 406. Bell explained the primary rationale for the contingency fee multiplier: [I]t assists parties with legitimate causes of action or defenses in obtaining competent legal representation even if they are unable to pay an attorney on an ■hourly basis. In this way, the availability of the multiplier levels the playing field between parties with unequal abilities to secure legal representation. Id. at 411. Bell also reaffirmed the holding of Quanstrom: A Court may consider applying a multiplier as a “useful tool” in determining a reasonable fee if the evidence in thé ■record establishes that: (1) the relevant market requires a contingency multiplier to obtain competent counsel; (2) the attorney was unable to mitigate the risk of nonpayment in any other way; and (3) use of a multiplier is justified based on factors such as the amount of risk involved, the results obtained, and the type of fee arrangement between attorney and client. Id. at 412 (citing Quanstrom, 565 So.2d at 834). Although Bell makes no mention of Pa-gue, the Court in Bell clearly indicated this Court’s continued, commitment to allowing the use of contingency fee multipliers cases where appropriate. Thus, Bell evidences this Court’s separation from federal precedent in this area. This. Court chose to continue to allow the use of multipliers, noting their usefulness in helping parties secure legal representation and their importance in ensuring access to courts. Bell, 734 So.2d at 411. A few years after Bell, in 2003, this Court, decided, in Sarkis v. Allstate Insurance Co., 863 So.2d 210 (Fla. 2003), that the use of a multiplier is not appropriate in determining attorney’s fees under section 768.79, Florida Statutes (2002)—the offer of judgment statute.[3] Sarkis held that the fees authorized by section 768.79 are sanctions that attach to the rejection of a reasonable offer, not to the underlying cause of action, and went on to note as follows: [T]he use of a multiplier must be consistent with the purpose of the fee-authorizing statute or rule. Quanstrom, 655 So.2d at 834; see also [Bell, 734 So.2d at 408-09]. The reason for an award of attorney fees authorized as a sanction for the rejection of an. offer to settle is very different from the reason that we authorized the use of a multiplier in Quanstrom, 555 So.2d at 833, and Rowe, 472 So.2d at 1151. In those cases, we authorized tlie use of a multiplier to promote access to courts by encouraging lawyers to undertake representation at the inception of certain cases." See Doyle-Vallery[ v. Aranibar], 838 So. 2d [1198, 1198-99 (Fla. 2d DCA 2003) ] (Altenbernd, J., concurring). Id. at 222. Thus, Sarkis clearly distinguished section 768.79, Florida Statutes, while reaffirming the reasons for authorizing the use of the contingency fee multiplier articulated in Rowe, Quanstrom, and Bell. Nothing in Sarkis suggests that section 627.428 was to be viewed prospectively as a sanction against insurers in the same way that Sarkis viewed section 768.79 as a sanction. Whereas the Supreme Court expressly reexamined Delaware Valley in Dague, the Supreme Court implicitly reexamined Blanchard in Perdue, 559 U.S. at. 542, 130 S.Ct. 1662-another public policy enforcement case involving the calculation of an attorney’s fee under 42 U.S.C. § 1988 for civil rights violations. Perdue did not involve a contingency fee multiplier. Rather, Perdue involved a lodestar enhancement “due to superior performance and results.” 559 U.S. at 546, 130 S.Ct. 1662. In rejecting the lower court’s increase of the lodestar (in a case involving seemingly remarkable results obtained by the plaintiffs’ attorneys), the Supreme Court observed: But as we have also said in prior cases, there is a strong presumption that the lodestar is sufficient; factors subsumed in the lodestar calculation cannot be used as a ground for increasing an award above the lodestar; and a-party seeking fees has the burden of identifying a factor that‘the lodestar does not adequately take into account and proving with specificity that an enhanced fee is justified. Id. While Perdue did not completely close the door on lodestar enhancements under federal law, Perdue clarified that’ Dague had indeed closed the door on any enhancements based on contingency risk. Id. at 558, 130 S.Ct. 1662 (“And the [lower] court’s reliance on the contingency of the outcome contravenes our holding in Dague.”). We now turn to the Fifth District’s application of the above.precedent in Joyce. In Joyce, the Fifth District quoted Alvarez, 175 So.3d at 357-58, which cited Perdue for the proposition that “[t]he application of a multiplier is the exception, not the rule ... and this presumption is overcome only in ‘rare’ and. ‘exceptional’ circumstances.” Joyce, 179 So.3d at 494. The Fifth District’s reliance on Perdue (via Alvarez) misses the point that Perdue addressed lodestar enhancements in contexts other than contingency fee multipliers. After reviewing this Court’s precedent regarding contingency fee multipliers, it is clear that this Court has never limited the use of contingency fee multipliers to only “rare” and “exceptional” circumstances. In fact,- in Bell, this Court emphasized the importance of contingency fee multipliers to those in need of legal counsel and made clear that trial courts could consider contingency, fee multipliers any time the requirements for a multiplier were met. Bell, 734 So.2d at.412 (citing Quanstrom, 555 So.2d at 834). This Court stated that, the purpose of section 627.428 is to “discourage insurance companies from contesting valid claims, and to reimburse insureds, for their attorney’s fees incurred when they must enforce in court their contract with the insurance company.” Id. at 410 n.10. Thus, it is clear that the Fifth District misapplied our precedent in Rowe, Quanstrom, and Bell.[4] To the extent that Respondents and their amici ask us to eliminate the contingency fee multiplier in all but the “rare” and “exceptional” case where attorney’s fees are awarded, we decline to adopt the reasoning of the United States Supreme Court in Perdue and Dague. First, this Court is not bound, in interpreting state statutes or prevailing party attorney’s fees in contracts, by United States Supreme Court precedent interpreting awards of attorney’s fees in federal statutes. Second, with all due deference to the United States Supreme Court, we do not accept the Pague majority’s rationale for rejecting contingency fee multipliers. Justice Scalia, writing for the majority in Pa-gue, couched his disapproval of contingency fee multipliers by reasoning that the multipliers incentivize nonmeritorious claims, so that those claims are effectively raised as often as meritorious claims: [T]he consequence of awarding contingency enhancement to take account of this “merits” factor would be to provide attorneys with the same incentive to bring relatively meritless claims as relatively meritorious ones. Assume, for example, two claims, one with underlying merit" of 20%, the other of 80%. Absent any contingency enhancement, a contingent-fee attorney would prefer to take the latter, since he is four times more likely to be paid. But with a contingency enhancement, this preference will disappear: the enhancement for the 20% claim would be a multiplier of 5 (100/20), which is quadruple the 1.25 multiplier (100/80) that would attach to the 80% claim. Thus, enhancement for the contingency risk posed by each ’ case would encourage meritorious claims to be brought, but only at the social cost of indiscriminately encouraging nonmerito-rious claims to be brought as well. We think that an unlikely objective of the “reasonable fees” provisions. “These statutes were not designed as a form of economic relief to improve the financial lot of lawyers.” [Pa. v. Del. Valley Citizens’ Council for Clean Air], 478 U.S. [546, 565, 106 S.Ct. 3088, 92 L.Ed.2d 439 (1986) ]. Dague, 505 U.S. at 563, 112 S.Ct. 2638. To the contrary, the contingency fee multiplier provides trial courts with the flexibility to ensure that lawyers, who take a difficult case on a contingency fee. basis, are adequately compensated. We also do not agree that the contingency fee multiplier encourages “nonmeritorious claims” and would, instead, posit that solely because a case is “difficult” or “complicated” does not mean that the case is nonmerito-rious. Indeed, without the option of a contingency fee multiplier, those with difficult and complicated cases will likely be unable or find it difficult to obtain counsel willing to represent them. As we stated in Bell, the primary rationale for the contingency fee multiplier is to assist: parties with legitimate causes of action or defenses in obtaining competent legal representation even if they are unable to pay an attorney on an hourly basis. In this way, the availability of the multiplier levels the playing field between parties with unequal-abilities to secure-legal representation. Bell, 734 So.2d at 411. As Justice O’Connor stated in dissent in Dague, “in certain circumstances a ‘reasonable’ attorney’s fee should not be computed by the purely retrospective lodestar figure, but also must incorporate a reasonable incentive to an attorney to take the case in the first place.” 505 U.S. at 575, 112 S.Ct. 2638 (O’Connor, J., dissenting). The point being, the lodestar amount, which awards an attorney for the work performed on the case, is properly analyzed through the hindsight of the actual outcome of the ease, whereas the contingency fee multiplier, which is intended to incentivize the attorney to take a potentially difficult or complex case, is properly analyzed through the same lens as thé attorney when making the decision to take the case. We disagree that the possibility of receiving a contingency fee multiplier leads to a “windfall.” See dissenting op. at 1142-43. While the attorney for the insurer charges and receives an hourly -rate regardless of whether the defense is successful, the insured’s attorney bears the risk of never being compensated for the number of hours spent litigating the case. This risk, among other factors, is what entitles the attorney to seek, and the trial court to consider, the application of a contingency fee multiplier. Moreover the dissent’s attempts to use the anecdotal experience of the increased number of PIP claims resulting from the Legislature’s elimination- of contingency fee multipliers to justify the rejection of a contingency fee multiplier in this case is unpersuasive. See dissenting op. at 1139-40. First, in many cases, an attorney’s representation in the PIP claim is adjunct to the attorney’s representation in the main automobile accident dispute. Second, in a PIP claim, generally, the sole issue is whether a medical bill was reasonable and necessary and whether the treatment was related to the accident. Thirdly, the fact that there are attorneys who specialize in PIP claims, which can be handled with relative ease in a volume practice, does not correlate with the availability of competent attorneys'who are willing to litigate other types of insurance coverage cases, where generally more complex issues áre raised. In any event, it was the Legislature—not this Court—that decided to prohibit the use of contingency fee multipliers in PIP cases. • - We also reject Justice Scalia’s reasoning in Pague that enhancement for contingency “would likely duplicate in substantial part factors already subsumed in the lodestar.” 505 U.S. at 562, 112 S.Ct. 2638. Although the lodestar amount takes into account a variety of factors, significantly, it does not include a consideration of whether the relevant market requires a contingency fee multiplier to obtain competent counsel. Importantly, this factor requires the court to consider whether the attorney’s client would have been able to obtain counsel absent the availábility of a contingency fee multiplier. Further, we conclude that there is no support in state courts, and indeed none has been offered, that the availability of contingency fee multipliers “make the setting of fees more complex and arbitrary.” Id. at 566, 112 S.Ct. 2638. In conclusion, we reaffirm our precedent in Rowe, Quanstroni, -and Bell regarding the approach that trial courts should take in calculating reasonable attorney’s fees and determining whether a contingency fee multiplier is warranted. We next turn to an examination of this case. This Case The Fifth District held that the trial court erred in determining that the Joyces’ attorney should be awarded a contingency fee multiplier. The Fifth District stated: This was not a complicated case, Either the Joyces had falsified their insurance application, or Federated had made an error. There were no esoteric legal issues or. complicated factual disputes to resolve. As one would anticipate given today’s legal market, there was no evidence the Joyces had any difficulty obtaining counsel to handle this matter. Indeed, it took only one phone call for the Joyces to secure counsel. Joyce, 179 So.3d at 494. The Joyces contend that the Fifth District also erred in looking at their actual experience in the market rather than looking at the relevant market itself, as required by Quanstrom and Bell. We agree. The Fifth District’s holding, directly contradicts the trial court’s conclusion, which was based on the evidence presented at the evidentiary hearing: The Court further finds that these cases are difficult, the issues involved were complex, involving policy interpretation, application of exclusion language, agency law, and other issues. As pointed out by Ms. Markham and Mr. Miles, this was a complex commercial case, with serious consequences to the [Joyces], especially after Federated submitted a proposal for settlement. , Moreover, Federated National continued to dispute the Joyces’ -claim, even after they knew that the Joyces’ had in fact made a full disclosure. Throughout the litigation, Federated National maintained that a--signed application for coverage completed by the Joyces did not exist and it only processed paperless applications. During the exchange of interrogatories in the case, Federated National, finally revealed that the agent who worked with the Joyces was believed to have the original application the Joyces completed. Following the discovery of the application, Federated National admitted that they would honor the claim, however, it was not until two months later that Federated National finaljy offered to settle the case. Thus, the trial-court’s findings, which properly considered -the complexity of these types of cases and this case in particular, were not in error. - The dissent would'have the trial court analyze the complexity of the case though the benefit of hindsight by looking at the actual outcome of the case. See dissenting op. at 1138. However, contingency fee multipliers are intended to encourage attorneys to take cases they otherwise might not take; Moreover, this was not an easy case. The litigation here spanned several months and the Joyces’ attorney spent more than 100 hours working on the case—a fact that all parties concede was a reasonable number. Thus, the trial court correctly analyzed the complexity of the case, looking to both the outcome of this case in particular and the complexity of these types of eases. Additionally, the Fifth District concluded that the trial court improperly found that the relevant market necessitated a contingency fee multiplier. In fact, the evidence presented at the attorney’s fees hearing indicated that there were no other attorneys in St.. Johns County who specialized in this type of litigation. Further, the Joyces’ attorney testified that she took the case with the hope and expectation that if she was successful, the court would apply a contingency fee multiplier, and she would not have taken the case without the possibility of a multiplier because she often fails to recover some or all of the fees owed on these first-party cases. The dissent contends that the trial court should have expanded its analysis into Duval County, where there are “thousands of attorneys.” Dissenting op. at 1137, Again, the dissent’s analysis misses the point of why trial courts are required to analyze the relevant market. This factor is' intended to assess, not just whether there are attorneys, in any given area, but specifically whether there are attorneys in the relevant' market who both have the skills to handle the case effectively and who would have taken the case absent the availability of a contingency fee multiplier. Based on the testimony presented, the trial court found that the Joyces’ attorney is highly qualified. She has been an attorney since 1989 and became licensed in Florida in 1994, She is a certified circuit court mediator by the Florida Supreme Court, as well as approved by the Department of Financial Services to mediate disputes between homeowners and insurance companies. Her practice focuses in large part on representing homeowners in disputes with their insurance carriers, and she is an experienced attorney in that area. Throughout her career, she has handled over seventy first-party coverage denial cases. Indeed, the trial court found: Although the Joyces did not seek any other counsel prior to retaining [their attorney], the Court finds based upon •the evidence presented, including the testimony of [the Joyces’ attorney] and [attorney’s fees expert], any such search would have been futile as there are few or no other attorneys who undertake this work who have offices in the St. Augustine area. The evidence shows that the plaintiffs would have been unlikely to have found any attorney in the St. Augustine area with a competency in first party [insurance coverage litigation] who would have agreed to take [their case] without the, possibility of a contingency fee risk multiplier. Thus, the trial court, applying the Rowe factors, found that a contingency fee multiplier of 2.0 was appropriate in this case. This conclusion was based on competent, substantial evidence. See Palma, 555 So.2d at 838. It was error for the Fifth District to conclude' otherwise. Therefore, the Fifth District erred not only in applying a “rare” and “exceptional” requirement but also in substituting its judgment on the Rowe factors based on disagreement with the trial court’s conclusions based on its findings of fact, CONCLUSION We reaffirm our adherence to the use of contingency fee multipliers in this State and make clear that there is not a “rare” and “exceptional” circumstances requirement. before a contingency fee multiplier can be applied. Accordingly, we quash the decision of the Fifth District below, disapprove of the Third District’s decision in Alvarez to the extent it is inconsistent with this opinion,' and remand the case to the Fifth District to reinstate the attorney’s fees award and judgment and for any other proceedings not inconsistent with this opinion. It is so ordered. LABARGA, C.J„. and LEWIS, and QUINCE, JJ., concur. POLSTON, J.,- concurs in result. CANADY, J., dissents with an opinion, in which LAWSON, J., concurs. . The "time and labor required” and the "novelty and difficulty of the question involved” are excluded from the calculation of the hourly rate because those factors are already taken into account in calculating the reasonable number of hours. See Rowe, 472 So.2d at 1150 ("The ‘novelty and difficulty of the question involved’ should normally be reflected by the number of hours reasonably expended on the litigation.”). . A prevailing party is entitled to an award of attorney's fees under the provisions of 42 U.S.C. § 1988. . Following Sarkis and Dague, in 2004, in Holiday v. Nationwide Mutual Fire Insurance, 864 So.2d 1215 (Fla. 5th DCA 2004), the Fifth District Court of Appeal certified the following question, in an attempt to clarify the effect of the United States Supreme Court's holding in Pague on this Court's jurisprudence: IN LIGHT’ OF THE SUPREME COURT’S DECISION IN SARKIS, MAY A MULTIPLIER BE APPLIED TO ENHANCE AN AWARD OF ATTORNEY’S FEES GRANTED UNDER A FEE-SHIFTING STATUTE SUCH AS SECTION 627.428, FLORIDA STATUTES (2002). Id. at 1221. However,,litis Court ultimately discharged jurisdiction in the case after briefing was completed. Nationwide Mut. Fire Ins. v. Holiday, 924 So.2d 809 (Fla. 2005). . In 2012, the Legislature amended the language of Florida's Personal Injury Protection ("PIP”) laws to specifically prohibit the use of a contingency fee multiplier in calculating reasonable attorney's fees to be "awarded to a prevailing insured in a PIP dispute. See ch. 2012-197, Laws of Fla.