# Third District Court of Appeal

## State of Florida

Opinion filed August 22, 2018.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D15-2411
Lower Tribunal No. 10-50915
_____

## Citizens Property Insurance Corporation,
Appellant,

vs.

## Agosta Laguerre,
Appellee.

An Appeal from the Circuit Court for Miami-Dade County, Jorge E. Cueto, Judge.

Link & Rockenbach, PA, and Kara Berard Rockenbach and Rachel J. Glasser (West Palm Beach); Hudson & Calleja, LLC, and Alexis Ann Calleja, for appellant.

Alvarez, Feltman & DaSilva, PL., and Paul B. Feltman, for appellee.

Before LAGOA, SALTER, and EMAS, JJ.

LAGOA, J.

Citizens Property Insurance Corporation ("Citizens") appeals from an Order on Plaintiff's Motion to Determine Amount of Fees and Costs and for Lodestar Multiplier awarding Agosta Laguerre ("Laguerre") $120,250.00 in attorney's fees. As discussed below, based on Joyce v. Federated National Insurance Co., 228 So. 3d 1122 (Fla. 2017), we conclude that the trial court did not abuse its discretion in awarding Laguerre a contingency fee multiplier,[1] and we affirm.

I.    FACTUAL AND PROCEDURAL HISTORY

Following Hurricane Wilma, Laguerre made an insurance claim for wind damage to her insurer, Citizens. Citizens investigated the claim and paid Laguerre $8,400.77 in December 2005. On March 3, 2010, Tony Quintana ("Quintana") of Claimserve, Co. ("Claimserve"), sent a letter to Citizens stating that he had been retained by Laguerre and that she demanded appraisal of the claim under the terms of Laguerre's insurance policy. Quintana attached an appraisal estimate prepared by Claimserve in the amount of $60,256.79. Citizens sent Laguerre two requests for information to which it claims Laguerre did not respond. On May 12, 2010, Laguerre retained the law firm of Alvarez, Carbonell & Gomez, PL, to represent Laguerre in her claim. Citizens sent a letter to Laguerre on July 9, 2010, stating that it would close Laguerre's claim if it did not receive a response from Laguerre within fourteen days. Citizens then closed the claim on July 27, 2010.

---

[1] Citizens does not challenge the award of the lodestar amount to Laguerre's counsel on appeal.

Laguerre filed suit against Citizens on September 20, 2010, alleging that Citizens had materially breached the insurance policy by failing to participate in the appraisal process. After Citizens filed its answer and affirmative defenses, it filed a motion for summary judgment on December 20, 2010, to which Laguerre filed a memorandum in opposition. After a hearing, the trial court denied Citizens' motion for summary judgment on May 10, 2011. On July 24, 2012, Citizens filed a proposal for settlement to Laguerre in the amount of $2,000.

Following the depositions of Laguerre and Quintana, Citizens filed a renewed motion for summary judgment on August 30, 2012. Laguerre filed a response to the motion. The trial court denied Citizens' renewed motion for summary judgment on April 8, 2013.

On May 16, 2013, Laguerre filed a motion to compel appraisal and abate the action. After a hearing, the trial court granted the motion and the matter proceeded to appraisal. The appraisal umpire ultimately issued an award in the amount of $27,367.63 on February 17, 2014.

Citizens agreed that Laguerre was entitled to attorney's fees under section 627.428, Florida Statutes (2014), and on August 13, 2014, the trial court held a fee hearing on the issue of the lodestar amount and whether a multiplier was justified. At the fee hearing, Laguerre presented the expert testimony of Roniel Rodriguez ("Rodriguez"). Rodriguez testified that these types of cases, which he described as

3

first-party, late notice cases, "have become very, very difficult." Rodriguez testified that:

> The difficulty with these cases is disparity between the insureds and the insurance companies. Insurance companies have a lot of funds. They're able to hire very, very skilled lawyers, like the lawyers we have in the room today, to challenge every aspect of the case. They have the ability to appeal every component of the case and a decision they don't find favorable, which makes it very difficult for insureds. **Insureds have a difficult time finding qualified and capable lawyers because of the risk that's involved.** These cases take a lot of time to mature. Here, we have a case from 2010 and we're now in 2014 and we've now come to a resolution, meaning the cost that's incurred by Plaintiff's counsel handling these cases on a contingency is a huge risk.

(emphasis added). He also testified as to the complexity of this type of case: "So there is not a resolution, which makes the complexity of the case significant in finding adequate counsel." Rodriguez opined that a 1.6 or 1.7 multiplier would be appropriate in "this type of case." Citizens cross-examined Rodriguez only with regard to his testimony on the reasonableness of the hourly rate sought by Laguerre's attorney.

Citizens presented the testimony of its fee expert, Dawn Jayma. She testified that Laguerre's attorneys "have thousands and thousands of these cases" and that the case was a run-of-the-mill property case, was not complex, as it concerned standard defenses, and thus did not warrant a multiplier. She also

4

testified that neither Laguerre nor an expert presented any evidence "that the client themselves called around town and couldn't find somebody to take their case."

Following the fee hearing, the trial court entered an Order on Plaintiff's Motion to Determine Amount of Fees and Costs and for Lodestar Multiplier (the "fee order") on September 15, 2015. The trial court applied an hourly rate of $325.00 and found that the reasonable number of hours expended in the matter was 185 hours, resulting in a lodestar amount of $60,125.00. The trial court also applied a 2.0 multiplier based on its findings that:

> 1) "[t]he relevant market requires a fee multiplier to obtain competent counsel";
> 2) "Plaintiff's counsel faces a substantial risk of non-payment";
> 3) "[t]he likelihood of success at the outset of the case, including compensation of Defendant's valuation of the claim in the Proposal for Settlement of $2,000.00 inclusive of attorney's fees and costs served to the Plaintiff in this action"; and,
> 4) "[t]he novelty and difficulty of the question involved in this matter and the results obtained."

The trial court further stated it "considered all of the relevant factors set forth in the Rules Regulating Florida Bar 4-1.5 and the Supreme Court's Opinions in Florida Patient's Compensation Fund v. Rowe, 472 So. 2d 1145 (Fla. 1985) and Standard Guar. Ins. Co. v. Quanstrom, 555 So. 2d 828 (Fla. 1990)." After applying the 2.0 multiplier to the lodestar amount, the trial court awarded Laguerre $120,250.00 in attorney's fees.

On September 30, 2015, Citizens filed a motion for rehearing relying upon State Farm Florida Ins. Co. v. Alvarez, 175 So. 3d 352 (Fla. 3d DCA 2015), which this Court issued one day after the trial court entered the fee order. Relevant here, Citizens argued that under Alvarez, no multiplier was warranted because there was no evidence presented at the fee hearing that Laguerre had difficulty obtaining counsel, the results obtained did not warrant a multiplier, and a multiplier cannot be based on the complexity of the issues. The trial court subsequently conducted a hearing on the motion for rehearing. At the hearing, the trial court stated that there was "no testimony [at the fee hearing] to the contrary" of Rodriguez's testimony that "this lady would have had a hard time finding a lawyer because of the problematic nature of winning these cases." The trial court upheld its multiplier award, stating:

> And that's why I did what I did, because there was no evidence to counter that, there was no cross-examination. Nobody asked Mr. Rodriguez: Mr. Rodriguez, why are you saying that this lady could have not found - -

The trial court entered an order on rehearing denying Citizens' request to vacate the multiplier and reduce the lodestar. This appeal ensued.

II.    STANDARD OF REVIEW

We review an order applying a multiplier to an award of attorney's fees for an abuse of discretion. Sunshine State Ins. Co. v. Davide, 117 So. 3d 1142, 1144 (Fla. 3d DCA 2013). "When a cause is tried without a jury, the trial judge's

6

findings of fact are clothed with a presumption of correctness on appeal, and these findings will not be disturbed unless the appellant can demonstrate that they are clearly erroneous." Id.

III.   ANALYSIS

On appeal, Citizens seeks reversal of the trial court's award of a 2.0 contingency fee multiplier in its calculation of reasonable attorney's fees. Specifically, Citizens contends that the multiplier was not warranted because: (1) there was no evidence Laguerre had difficulty obtaining competent counsel; (2) the results obtained do not warrant a multiplier; and (3) the complexity of the issues in the case cannot be a basis for awarding a multiplier. In support of its arguments, Citizens primarily relies upon this Court's decision in State Farm Florida Insurance Co. v. Alvarez, 175 So. 3d 352 (Fla. 3d DCA 2015), which reversed the award of a contingency fee multiplier. Id. at 357. In Alvarez, this Court held that a trial court may apply a contingency fee multiplier "only in 'rare' and 'exceptional' circumstances." Id. at 358 (quoting Perdue v. Kenny A. ex rel. Winn, 559 U.S. 545, 554 (2010)).

After hearing oral argument, we held the instant case in abeyance pending the Florida Supreme Court's review of the Fifth District Court of Appeal's decision in Federated National Insurance Co. v. Joyce, 179 So. 3d 492 (Fla. 5th DCA 2015) ("Joyce I"). In Joyce I, the Fifth District Court of Appeal relied upon

7

this Court's decision in Alvarez and held that contingency fee multipliers are only available in "rare" and "exceptional" circumstances. The Florida Supreme Court in Joyce v. Federated National Insurance Co., 228 So. 3d 1122, 1131-32 (Fla. 2017) ("Joyce II"), subsequently rejected the requirement that an award of a contingency fee multiplier is proper only in "rare" and "exceptional" circumstances, and reaffirmed the principles established in Florida Patient's Compensation Fund v. Rowe, 472 So. 2d 1145 (Fla. 1985), and Standard Guarantee Insurance Co. v. Quanstrom, 555 So. 2d 828 (Fla. 1990). Based on the Florida Supreme Court's decision in Joyce II, we conclude that Citizens can no longer rely on Alvarez's holding that a contingency fee multiplier can only apply in "rare" and "exceptional" cases and that we are limited to the factors laid out in Rowe, Quanstrom, and Joyce II. Thus, for the reasons discussed below, we affirm the trial court's award of the multiplier.

A. The Current State of Law on Contingency Fee Multipliers in Florida

First, we address the Florida Supreme Court's jurisprudence on contingency fee multipliers. The Florida Supreme Court first adopted the federal lodestar approach for computing reasonable attorney's fees in Rowe, 472 So. 2d at 1146. In adopting this approach, the Florida Supreme Court set forth the following factors for a trial court to determine whether an award of attorney's fees is reasonable:

8

(1) The time and labor required, the novelty and difficulty of the question involved, and the skill requisite to perform the legal service properly.

(2) The likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer.

(3) The fee customarily charged in the locality for similar legal services.

(4) The amount involved and the results obtained.

(5) The time limitations imposed by the client or by the circumstances.

(6) The nature and length of the professional relationship with the client.

(7) The experience, reputation, and ability of the lawyer or lawyers performing the services.

(8) Whether the fee is fixed or contingent.

Id. at 1150.[2]  Under Rowe, the trial court must first determine "the number of hours reasonably expended on the litigation" and then multiply those hours by the "reasonable hourly rate" in order to arrive at the lodestar figure.  Id. at 1150-51. "Once the court arrives at the lodestar figure, it may add or subtract from the fee based upon a 'contingency risk' factor and the 'results obtained.'"  See id. at 1151.

The Florida Supreme Court later reexamined Rowe in Quanstrom.  In Quanstrom, the Florida Supreme Court reaffirmed "the lodestar approach as the

---

[2] These eight criteria are now similarly embodied in Florida Bar Rule 4–1.5.

basic starting point" for determining reasonable attorney's fees in tort and contracts cases, 555 So. 2d at 833, but held that a trial court, in determining whether to award a multiplier in tort and contract cases, must consider:

> (1) whether the relevant market requires a contingency fee multiplier to obtain competent counsel; (2) whether the attorney was able to mitigate the risk of nonpayment in any way; and (3) whether any of the factors set forth in Rowe are applicable, especially, the amount involved, the results obtained, and the type of fee arrangement between the attorney and his client.

Id. at 834; see also State Farm Fire & Cas. Co. v. Palma, 555 So. 2d 836, 838 (Fla. 1990) (applying these factors in affirming a contingency fee multiplier in a case decided the same day as Quanstrom). Quanstrom further emphasized that "[e]vidence of these factors must be presented to justify the utilization of a multiplier." 555 So. 2d at 834.

In the following years, this Court has applied the principles in Rowe and Quanstrom to uphold the award of contingency fee multipliers where the multiplier is supported by competent, substantial evidence in the record. See, e.g., Citizens Prop. Ins. Corp. v. Pulloquinga, 183 So. 3d 1134, 1137-38 (Fla. 3d DCA 2015); TRG Columbus Dev. Venture, Ltd. v. Sifontes, 163 So. 3d 548, 553 (Fla. 3d DCA 2015); Davide, 117 So. 3d at 1145-46; Mercury Cas. Co. v. Flores, 905 So. 2d 179, 180-81 (Fla. 3d DCA 2005). In Alvarez, however, this Court reversed an award of a multiplier, finding that "[t]he application of a multiplier is the exception, not the

10

rule," and that "'there is a "strong presumption" that the lodestar figure is reasonable,' . . . overcome only in 'rare' and 'exceptional' circumstances.'" 175 So. 3d at 357-58 (quoting Perdue, 559 U.S. at 554). In reaching that conclusion, this Court relied on United States Supreme Court jurisprudence subsequent to the Florida Supreme Court's adoption of the federal lodestar approach in Rowe.

In clarifying its jurisprudence on contingency fee multipliers in Joyce II, the Florida Supreme Court rejected limiting the use of multipliers to rare and exceptional circumstances, disapproving of Alvarez "to the extent it is inconsistent with [Joyce II]." See 228 So. 3d at 1135. In Joyce II, after the insurer denied coverage of a claim based on alleged material misrepresentations, the insureds "hired an attorney on a contingency fee basis because they could not afford an attorney at an hourly rate" and sued the insurer. Id. at 1123. After the insurer settled the claim with the insureds, the parties stipulated that the insureds were entitled to reasonable attorney's fees pursuant to section 627.428, Florida Statutes (2014). Joyce II, 228 So. 3d at 1123. The trial court held a fee hearing, where it heard testimony from the insureds' attorney and fee expert and the insurance company's fee expert. Id. at 1124. After the hearing, the trial court applied the Quanstrom factors and awarded the insureds' attorney the lodestar amount as well as a contingency fee multiplier of 2.0. See id. The Fifth District reversed the trial court's award of the contingency fee multiplier, "concluding that the federal

11

lodestar approach includes 'a "strong presumption" that the lodestar represents the "reasonable fee,"'" and that, based on <u>Alvarez</u>, which cited to the United States Supreme Court case of <u>Perdue v. Kenny A *ex rel.* Winn</u>, 559 U.S. 545 (2010), the multiplier may be "used only in 'rare' and 'exceptional' circumstances," and finally, that the case "was not complex" and the insureds "had no trouble in finding and attorney to represent them." <u>Id.</u> at 1125 (quoting <u>Joyce I</u>, 179 So. 3d at 493-94).

The Florida Supreme Court quashed the Fifth District's decision, concluding that its precedent had "never limited the use of contingency fee multipliers to only 'rare' and 'exceptional' circumstances." <u>See</u> <u>id.</u> at 1131-32. The Florida Supreme Court stated that "the purpose of section 627.428 is to 'discourage insurance companies from contesting valid claims, and to reimburse insureds for their attorney's fees incurred when they must enforce in court their contract with the insurance company.'" <u>Id.</u> at 1132 (quoting <u>Bell v. U.S.B. Acquisition Co. Inc.</u>, 734 So. 2d 403, 410 n.10 (Fla. 1999)). Although <u>Rowe</u> introduced the lodestar to Florida jurisprudence by adopting the federal lodestar standard, the Florida Supreme Court in <u>Joyce II</u> expressly declined to adopt the United States Supreme Court's rationale for that Court's subsequent rejection of contingency fee multipliers as first articulated in <u>Burlington v. Dague</u>, 505 U.S. 557 (1992).

In Dague, the United States Supreme Court limited the use of the contingency fee multiplier, reasoning that "'[t]he consequence of awarding contingency enhancement . . . would be to provide attorneys with the same incentive to bring relatively meritless claims as relatively meritorious ones.'" Id. at 563.[3] In rejecting the developments in federal lodestar jurisprudence regarding contingency fee multipliers, the Florida Supreme Court stated:

> To the contrary, the contingency fee multiplier provides trial courts with the flexibility to ensure that lawyers, who take a difficult case on a contingency fee basis, are adequately compensated. We also do not agree that the contingency fee multiplier encourages 'nonmeritorious claims' and would, instead, posit that solely because a case is 'difficult' or 'complicated' does not mean that the case is nonmeritorious.

Joyce II, 228 So. 3d at 1132. The Florida Supreme Court further observed that "the insured's attorney bears the risk of never being compensated for the number of hours spent litigating the case. This risk, among other factors, is what entitles the attorney to seek, and the trial court to consider, the application of a contingency fee multiplier." Id. at 1133.

The Florida Supreme Court further stated that a fee multiplier "is properly analyzed through the same lens as the attorney when making the decision to take

---

[3] In a similar manner, the United States Supreme Court disapproved of non-multiplier, lodestar enhancements except in "rare circumstances" in Perdue v. Kenny A ex rel. Winn, 559 U.S. 545, 553-54 (2010), the case relied upon by this Court in Alvarez. See 175 So. 3d at 357-58.

13

the case," as it "is intended to incentivize the attorney to take a potentially difficult or complex case." Id. Thus, under Quanstrom, as applied by Joyce II, it is improper for a "trial court [to] analyze the complexity of the case though [sic] the benefit of hindsight by looking at the actual outcome of the case." Id. at 1134. Turning to Quanstrom's relevant market factor, the Florida Supreme Court also clarified that the test is to "look[] at the relevant market itself," not the plaintiff's "actual experience in the market." Id. The Florida Supreme Court noted the rationale of the relevant market factor is "to assess, not just whether there are attorneys in any given area, but specifically whether there are attorneys in the relevant market who both have the skills to handle the case effectively and who would have taken the case absent the availability of a contingency fee multiplier." Id. at 1135. In quashing the decision of the Fifth District Court of Appeal in Joyce II, the Florida Supreme Court held that the contingency fee multiplier of 2.0 awarded by the trial court was based on competent, substantial evidence and further held that the Fifth District erred "in applying a 'rare' and 'exceptional' requirement." Id.

B. This Case

Applying the principles above, we now turn to the case at hand. Citizens challenges the award of the 2.0 contingency fee multiplier on several grounds. First, Citizens argues that the relevant market does not necessitate the award of a

14

multiplier. With regard to <u>Quanstrom</u>'s relevant market factor, <u>Joyce II</u> explained that trial courts must analyze this factor in order to assess "specifically whether there are attorneys in the relevant market who both have the skills to handle the case effectively and who would have taken the case absent the availability of a contingency fee multiplier." <u>Id.</u> The Florida Supreme Court has made it clear that trial courts must consider "the relevant market itself," rather than the attorney's client's "actual experience in the market." <u>Id.</u> at 1134. Here, Laguerre's expert, Rodriguez, testified:

> The difficulty with these cases is disparity between the insureds and the insurance companies. Insurance companies have a lot of funds. They're able to hire very, very skilled lawyers, like the lawyers we have in the room today, to challenge every aspect of the case. They have the ability to appeal every component of the case and a decision they don't find favorable, which makes it very difficult for insureds. **Insureds have a difficult time finding qualified and capable lawyers because of the risk that's involved.** These cases take a lot of time to mature. Here, we have a case from 2010 and we're now in 2014 and we've now come to a resolution, meaning the cost that's incurred by Plaintiff's counsel handling these cases on a contingency is a huge risk.
>
> They have to hire experts. There's a lot of time involved. There's personnel involved. If they don't prevail, it's a loss. The Plaintiff's counsel eats those costs. Even if they do prevail, there's a huge amount of risk because there's a possibility of an appeal. A lot of these cases get appealed. Even after a jury verdict, they get appealed. Even after a resolution in settlement, there's disputes. So there is not a resolution, which makes the complexity of

15

the case significant in finding adequate counsel. The only
reason I bring that up is the possibility of a multiplier.

(emphasis added). Notably, Citizens chose not to cross-examine Rodriguez

concerning the application of a fee multiplier and did not present any non-expert

evidence nor relevant expert testimony that competent attorneys would have taken

the case without a multiplier. Instead, as to this issue, Citizens' expert witness

testified that Laguerre had not presented any evidence that she had difficulty

finding a lawyer to represent her. Although we find that the testimony supporting

the trial court's conclusion was minimal,[4] a trial court generally may rely on

"expert testimony that a party would have difficulty securing counsel without the

opportunity for a multiplier" in support of the imposition of the multiplier. Massie

v. Progressive Express Inv. Co., 25 So. 3d 584, 585 (Fla. 1st DCA 2009); see also

Sunshine State Ins. Co. v. Davide, 117 So. 3d 1142, 1145 (Fla. 3d DCA 2013)

(stating that under an abuse of discretion standard of review, where "there is

evidence in the record presented by the experts to support the trial court's

---

[4] For example, in Joyce II, the insureds' expert testified "that a contingency fee multiplier was necessary to obtain competent counsel based on the expert having 'interviewed attorneys that accept claims against insurance companies where claims have been denied.'" 228 So. 3d at 1124. While the dissent in Joyce II noted the infirmities in this evidentiary basis, see id. at 1140-41 (Canady, J., dissenting), the majority nonetheless concluded that it was sufficient. In this case, Laguerre's expert testimony did not meet even that threshold, and our conclusion in this case might have been different had Citizens elicited information through cross-examination of Laguerre's expert witness or presented a different quantum of evidence relating to the relevant market during its own presentation.

conclusion" concerning the application of a multiplier, "we must affirm the order of the trial court if reasonable people could differ as to the propriety of the action taken"). Thus, given the nature of the testimony presented at the fee hearing and although we may have reached a different conclusion had a different standard of review applied here, we must therefore find that the trial court did not abuse its discretion in finding that "[t]he relevant market require[d] a fee multiplier to obtain competent counsel."

Citizens also argues that the trial court abused its discretion in its application of the third <u>Quanstrom</u> factor, specifically the finding that the results obtained in the instant case warranted a multiplier. Citizens contends that the "relatively small recovery" does not justify the imposition of a multiplier, especially where Citizens made offers to settle Laguerre's claim prior to her filing suit. We find this argument unpersuasive in light of <u>Joyce II</u>. Citizens' proposal for settlement filed during the case offered to settle Laguerre's claim for $2,000, a sum inclusive of attorney's fees, costs, and prejudgment interest. Ultimately, the appraisal umpire issued an award in the amount of $27,367.63, less the prior payment to Laguerre. Citizens' argument that a multiplier is not warranted because Laguerre would have obtained *some* recovery had she settled the claim based on their pre-suit offers is not supported by evidence of the amount of these offers in the record or by case law subsequent to <u>Quanstrom</u>. Indeed, in <u>Joyce II</u>, the Florida Supreme Court held

17

that the trial court correctly analyzed the "outcome" of that case when it found that "[a]lthough the amount involved [$23,500] 'was not exceptionally large,' it was material to the Joyces and the results favored the Joyces." 228 So. 3d at 1125. Therefore, the trial court did not abuse its discretion in finding the results obtained in this case warranted a multiplier.

Finally, Citizens argues that the trial court abused its discretion both in considering the complexity of the case and in finding that the complexity of the instant case warrants application of a multiplier. As an initial matter, Joyce II makes clear that a trial court does not err in considering the complexity and difficulty of a case in analyzing whether a multiplier is appropriate. See id. at 1134-35. Turning to whether the complexity of the instant case warrants a contingency fee multiplier, we again note that a contingency fee multiplier analysis "is properly analyzed through the same lens as the attorney when making the decision to take the case." Id. at 1133. For this reason, the fact, in hindsight, that this case ultimately consisted of two summary judgment proceedings and minimal discovery and did not proceed to trial is not determinative on this issue. Laguerre's expert, Rodriguez, testified at the fee hearing that these types of cases "have become very, very difficult," as insurance companies view them as "late notice type of case[s]" that "take a lot of time to mature." He further testified that the length of these cases creates a huge risk for an insured's attorney to handle on a

18

contingency basis, as the attorney "eats those [litigation] costs" throughout the case. Indeed, this case commenced in September 2010 and did not reach resolution until February 2014, and the trial court found that the reasonable number of hours spent by Laguerre's attorneys on the case was 185, a figure that Citizens does not dispute on appeal. Cf. id. at 1134 (affirming the trial court's award of a multiplier where litigation spanned "several months" and the "Joyces' attorney spent more than 100 hours working on the case"). In support of Citizens' position on this issue, Citizens' expert, Jayma, testified that Laguerre's case was a run-of-the-mill property case and not complex, as it concerned standard defenses. While competing testimony therefore existed, we cannot find that the trial court abused its discretion in reaching its conclusion on this final issue as its conclusion was supported by competent, substantial evidence. See Sunshine State Ins. Co., 117 So. 3d at 1145.

IV.    CONCLUSION

Because there is competent, substantial evidence in the record to support the award of a contingency fee multiplier under the principles of Rowe, Quanstrom, and Joyce II, we find that the trial court did not abuse its discretion in awarding the 2.0 contingency fee multiplier to Laguerre and thus affirm the trial court's order.

Affirmed.