555 So.2d 836 (1990)
STATE FARM FIRE & CASUALTY CO., Petitioner,
v.
Margarita J. PALMA, Respondent.
No. 72730.
Supreme Court of Florida.
January 11, 1990.
Sam Daniels of Daniels & Hicks, P.A., Miami, and McAliley, Flanagan, Maniotis & Brooks, P.S., West Palm Beach, for petitioner.
Larry Klein of Klein & Beranek, P.A. and Ronald V. Alvarez, P.A., West Palm Beach, for respondent.
OVERTON, Justice.
We have for review State Farm Fire & Casualty Co. v. Palma, 524 So.2d 1035 (Fla. 4th DCA 1988), in which the district court relied on Quanstrom v. Standard Guaranty Insurance Co., 519 So.2d 1135 (Fla. 5th DCA 1988), in holding that a contingency fee multiplier could be used to determine attorney's fees. We accepted jurisdiction in Quanstrom and disapproved the district court's decision but approved the result. Standard Guaranty Ins. Co. v. Quanstrom, 555 So.2d 828 (Fla. 1990). Id. We have jurisdiction. Art. V, § 3(b)(3), Fla. Const. We hold that the trial court's application of a contingency fee multiplier of 2.6 was proper because of the extraordinary circumstances present. Further, the new range for multipliers established in Quanstrom does not apply to the instant case.
The facts indicate that Margarita Palma suffered injuries as a result of an automobile accident. As part of her treatment for the injuries, Palma incurred a $600 medical expense for a thermographic examination. Palma submitted the bill to her insurer, State Farm, which refused the claim. Palma brought suit against State Farm, which answered that it was not required to pay for the thermographic examination because this treatment did not constitute a necessary medical service consistent with section 627.736, Florida Statutes (1983).[1] State *837 Farm counterclaimed, seeking declaratory relief. In its judgment, the trial court summarized this counterclaim:
"The action for declaratory relief asked the Court to declare that thermographic examinations in musculoskeletal injuries and nerve root impingement were not necessary medical treatment as defined under Florida Statute 627.736 (Personal Injury Protection) and, therefore, were not reimbursable to the plaintiff, or any plaintiff, under her PIP coverage in the insurance policy issued by State Farm. The policy language tracked F.S. 627.736.
State Farm also asked the Court to declare that its refusal to pay for thermograms and claims involving musculoskeletal injuries or nerve root impingement did not constitute an unfair business practice under F.S. 624.155, commonly known as the Civil Remedies Act."
Palma v. State Farm Fire & Casualty Co., 489 So.2d 147, 148 (Fla. 4th DCA), review denied, 496 So.2d 143 (Fla. 1986). After a six-day trial, at which twelve medical experts testified, the trial court found that a thermographic examination was not a necessary medical service. On appeal, the Fourth District Court of Appeal reversed, stating: "We hold the trial judge's definition of necessary medical service too restrictive to comport with a liberal interpretation of the No-Fault Act." Id. at 150. On remand, the trial court entered a judgment against State Farm and then conducted a hearing on attorney's fees. Under the authority of section 627.428(1), Florida Statutes (1983),[2] it applied the principles set forth in our decision in Florida Patient's Compensation Fund v. Rowe, 472 So.2d 1145 (Fla. 1985), and awarded attorney's fees to Palma in the amount of $253,500. In computing this fee, the trial court found that 650 was a reasonable amount of hours and that a reasonable hourly rate was $150. Further, the trial court applied a multiplier of 2.6. We note that State Farm's counsel expended 731 hours on this case. On appeal, the district court affirmed and found the fee to be reasonable in light of the extraordinary circumstances presented, stating:
It appears that State Farm decided to "go to the mat" over the bill for thermographic studies because, apparently, it is a diagnostic tool which is becoming more widely used contrary to State Farm's view of what is "necessary medical treatment" as provided in the statute. Having chosen to stand and fight over this charge, State Farm, of course, made a business judgment for which it should have known a day of reckoning would come should it lose in the end. The court described a similar situation in McGowan v. King, Inc., 661 F.2d 48, 51 (5th Cir.1981), in reversing what it termed a "stingy" allowance of attorney's fees:
The borrower's counsel did not inflate this small case into a larger one; its protraction resulted from the stalwart defense. And although defendants are not required to yield an inch or to pay a dime not due, they may by militant resistance increase the exertions required of their opponents and thus, if unsuccessful, be required to bear that cost.

*838 The trial of the case took six days during which eleven medical doctors and a chiropractic physician testified to all aspects of the medical procedure and study known as thermography... . At the evidentiary hearing ... the court heard three expert witnesses testify that the 650 hours that Palma's counsel spent on the case were justified and that an hourly rate of $150 was reasonable... .
... .
We are fully cognizant of the great disparity between the monetary sum recovered in the case and the amount of the attorney's fee. However, the parties elected to go toe-to-toe over the issue and they brought to bear all of their skill and resources to try to win the day as evidenced by the number of medical experts and the time of trial (which, had it been a jury trial, would doubtless have been much longer). Furthermore, the real issue was not an incidental medical bill. This record is clear that State Farm hoped to prove a point in this case regarding bills for this medical procedure that would avail it in other cases nationally. So, the stakes were high and the issue became complex, justifying the legal effort.
524 So.2d at 1036-37 (footnote omitted, citation omitted, emphasis added).
In this appeal, State Farm contends that the multiplier discussed in Rowe should be applicable only to those contingency fee arrangements in which the attorney has agreed that his fee will be controlled by the amount recovered. We reject this contention, holding that a contingency adjustment multiplier may be applied to those contingency fee arrangements in which the amount of the attorney's fee is not controlled by the amount of the recovery. While the amount involved would be a significant factor in some circumstances, it is not one here. In this case, the issue was unrelated to the amount involved but concerned the establishment of a nationwide precedent regarding thermographic examinations. The risk of nonpayment and the extraordinary circumstances justify the use of a multiplier. This case falls within a category two claim, as defined in Quanstrom. Consequently, the fee ordinarily would be dependent on the amount involved and the result achieved. However, the amount involved is not a significant factor in this cause due to the extraordinary circumstances. This is an illustration of the need for flexibility to allow for this type of unique and rare case, especially where the prevailing party has not been the primary cause of the extensive litigation.
We agree with State Farm that we should reconsider the Rowe multiplier in light of the United States Supreme Court's recent decision in Pennsylvania v. Delaware Valley Citizens Council for Clean Air, 483 U.S. 711, 107 S.Ct. 3078, 97 L.Ed.2d 585 (1987). In Quanstrom, we did so, holding that the range of the multiplier should be modified from 1.5 to 3.0, as set forth in Rowe, to 1.0 to 2.5. Quanstrom, 555 So.2d at 834. Although we modified the range, we made that change prospective in application to attorney's fees awarded by trial courts after the date that Quanstrom was released.
Applying the principles set forth in Rowe, we find that the trial judge had substantial, competent evidence to justify that a contingency fee multiplier was necessary to compute a reasonable attorney's fee.
While the multiplier in this case exceeds the new range set forth in Quanstrom, we hold that it was applied properly in accordance with Rowe. The reduced multiplier range has only prospective application to attorney's fees determined after the date of the release of Quanstrom.
For the reasons expressed, we approve the decision of the Fourth District Court of Appeal in this cause.
It is so ordered.
EHRLICH, C.J., and McDONALD, SHAW, BARKETT, GRIMES and KOGAN, JJ., concur.
NOTES
[1] Section 627.736, Florida Statutes (1983), states, in pertinent part:

(1) REQUIRED BENEFITS.  Every insurance policy complying with the security requirements of s. 627.733 shall provide personal injury protection to the named insured ... as a result of bodily injury, sickness, disease, or death arising out of the ownership, maintenance, or use of a motor vehicle as follows:
(a) Medical benefits.  Eighty percent of all reasonable expenses for necessary medical, surgical, X-ray, dental, and rehabilitative services, including prosthetic devices, and necessary ambulance, hospital, and nursing services... .
[2] Section 627.428(1), Florida Statutes (1983), provides:

Upon the rendition of a judgment or decree by any of the courts of this state against an insurer and in favor of any named or omnibus insured or the named beneficiary under a policy or contract executed by the insurer, the trial court or, in the event of an appeal in which the insured or beneficiary prevails, the appellate court shall adjudge or decree against the insurer and in favor of the insured or beneficiary a reasonable sum as fees or compensation for the insured's or beneficiary's attorney prosecuting the suit for which the recovery is had.