663 So.2d 1334 (1993)
Murray ZIONTZ and Suzanne Ziontz, Appellants,
v.
OCEAN TRAIL UNIT OWNERS ASSOCIATION, INC., Appellee.
No. 91-2819.
District Court of Appeal of Florida, Fourth District.
May 5, 1993.
Order Denying Rehearing November 22, 1995.
Clarification Denied January 4, 1996.
John L. Avery, Jr., of the Law Offices of John L. Avery, Jr., Jupiter, for appellants.
Daniel S. Rosenbaum of Becker & Poliakoff, P.A., West Palm Beach, for appellee.
FARMER, Judge.
We affirm the assessment of $100 to pay general creditors of the association. We distinguish this assessment from the earlier $500 assessment by this same association, which we have now invalidated. Mead v. Ocean Trail Unit Owners Association Inc., 638 So.2d 963 (Fla. 4th DCA 1993).
The assessment in Mead was to pay costs directly related to the association's purchase of the adjoining property. In Ocean Trail Unit Owners Association Inc. v. Levy, 489 So.2d 103 (Fla. 4th DCA 1986), we upheld the trial court's invalidation of that purchase. Because the Mead assessment was directly tied to the invalidated purchase, we determined that the assessment was equally invalid. The assessment today, however, is different from the one in Mead, for it was necessary to pay general creditors after the association's bank accounts had been garnished by unit owners who held money judgments to recover the illegal, initial assessments.[1]
The attorney's fees award here is quite another matter. In the final order on fees, the trial court made the altogether unacceptable finding that the association's lawyers *1335 had reasonably spent 473.1 hours [sic] on this litigation, which just happens to be the precise number of hours that the attorneys say they spent. It will come as no surprise to anyone that their experts also testified that these hours were reasonable.
Our review of the time records establishes to our satisfaction that more than 154 hours alone were spent in preparing for summary judgment![2] The issue for this summary judgment turned on uncontested, record facts pertaining to the assessment. The single legal issue was whether the depletion of the association's bank accounts by the garnishments, thereby rendering the association without funds to pay general expenses, provided a sufficient basis for this $100 assessment to pay such expenses. In short, there was nothing legally or factually complicated to be determined. As a consequence of this extraordinary number of hours, the total dollar amount of fees actually awarded by the trial court was $60,538  along with costs, principally consisting of expert witness fees for the attorney's fees hearing, in the amount of $7,649.
With all due regard to the role of this busy trial judge, we think a $60,000 fee award to foreclose a $100 common assessment is about as obviously against the manifest justice of the cause as anything could possibly be. See Miller v. First American Bank and Trust, 607 So.2d 483 (Fla. 4th DCA 1992). Conceding that there is no transcript of the fee hearing and that there was competent evidence in the form of testimony of the fee-seeking lawyers and their expert witnesses to support the award, we agree entirely with Judge Schwartz, the author of Miller, that we have a special responsibility over attorney's fees and need not abandon as judges what we knew as lawyers or  for that matter  our common sense.
The association's lawyers seek to avoid the manifest justice rule by comparing this case with State Farm Fire & Casualty Co. v. Palma, 524 So.2d 1035 (Fla. 4th DCA 1988), aff'd, 555 So.2d 836 (Fla. 1990). Even if it were, and we reject the analogy,[3] then in reality the association actually occupies the position of State Farm, and not of Palma. It was the association who decided to go to the mat to establish the propriety of this assessment, not the Ziontzes. The mere fact that the Ziontzes were forced to take up arms against this sea of troubles  this wretchedly overwrought litigation  does not convert the association's attempted avoidance of this defense into its own holy crusade to vindicate the condominium way of life.
We cannot let this occasion pass without commenting on what we perceive to be the source of fee awards such as this one. Since the Florida Supreme Court's decision in Florida Patient's Compensation Fund v. Rowe, 472 So.2d 1145 (Fla. 1985), there seems to be a virus loose in Florida. As Judge Schwartz said in Miller, the obsession with hours and hourly rates required by Rowe has spawned among lawyers moving for court awarded fees the "multiple evils of exaggeration, duplication, and invention." Miller, 607 So.2d at 485.
The use of lawyers as expert witnesses to justify the fees sought as reasonable seems to have lead only to more exaggeration and invention. Perhaps it is quixotic to expect the lawyer witnesses who actually testify at fee hearings to do anything but justify the fee claimed, for if they do not they simply would not be called to testify. Opposing expert witnesses may not be much of a reliable check on the claimant's lawyers, because lawyers in general profit from the patina of authority given to one's own fees by a court award of a similar one. Hence, the obsession to justify hours and rates now seems to riddle the fee process with an air of mendacity.
This obsession with hours and rates has apparently caused judges and lawyers to lose *1336 sight of a truth they formerly accepted almost universally: viz., that there is an economic relationship to almost every legal service in the market place. The value of any professional service is almost always a function of its relationship to something else  i.e., some property or other right. In this case, for example, no business could long expect to spend $60,000 to collect $100 accounts. Trial judges and lawyers used to accept a priori the idea that, no matter how much time was spent or how good the advocate, the fair price of some legal victories simply could not exceed  or, conversely, should not be less than  some relevant sum not determined alone by hours or rates. Since Rowe, that all seems lamentably forgotten.
This case appears to exemplify what has gone wrong. Fees of the kind awarded here threaten to make the respect of nonlawyers for judicial control of fees  indeed, for the very legal system itself  a thing of the past. Because of the manifest justice rule in this instance, however, and not out of any disagreement with Rowe, we conclude that this fee award must be set aside.
ASSESSMENT AFFIRMED; ATTORNEY'S FEES REVERSED.
ANSTEAD, J., concurs.
LETTS, J., concurs in part and dissents in part with opinion.
LETTS, Judge, concurring in part and dissenting in part.
While I agree with much of what Judge Farmer has said, especially with his comments about Florida Patient's Compensation Fund v. Rowe, 472 So.2d 1145 (Fla. 1985) and the "fee virus" that has come to pass in Florida, I cannot join with him in striking down the fee in this particular case. As I view it, both sides went to the mat here, not just the Association, and both hired counsel. Obdurate unit owners who are willing to go toe-to-toe over $200,[4] help call the tune and may well have to pay the piper if they lose. Obviously, the all-out-effort by the Association was not limited to the collection of $200. The Association fought also to preserve its right under the condominium declaration to levy and to collect assessments, and had it lost, it would have been required to reimburse six hundred and two other unit owners, at $100 a piece, not to mention pay costs and attorney's fees. Thus, as Judge Downey remarked in State Farm Fire & Casualty Co. v. Palma, 524 So.2d 1035, 1037 (Fla. 4th DCA 1988), decision approved, 555 So.2d 836, 838 (Fla. 1990), "the stakes were high and the issue became complex, justifying the legal effort."
I do not believe my dissent is incompatible with the decision in Miller v. First American Bank & Trust, 607 So.2d 483 (Fla. 4th DCA 1992), written by Judge Schwartz, since there are several distinctions. To begin with, the fees in Miller were $242,000 rather than the $60,000 awarded here. Moreover, the Miller opinion states, "there was essentially no defense and the case was resolved without trial or even depositions." On the other hand, the case before us now was relatively hard fought. Judge Schwartz, and the panel in Miller, just could not believe that over sixteen hundred attorney hours were expended. However, I am, by no means, certain that the expenditure of four hundred and seventy-three hours in the case at bar is necessarily incredible. Thus, though I agree the number of hours allegedly expended was far too high in relation to the substance of the controversy, I must leave it to the trier of fact, with the help of highly skilled expert witnesses, to make that determination and not substitute my judgment for his.

ON MOTION FOR REHEARING
We stayed proceedings on appellants' motion for rehearing on the merits, pending the resolution of the supreme court's review of our decision in the related case of Mead v. Ocean Trail Unit Owners Association Inc., 638 So.2d 963 (Fla. 4th DCA 1993). In Ocean Trail Unit Owners Association Inc. v. Mead, 650 So.2d 4 (Fla. 1994), the supreme court reversed our decision in Mead. We now conclude that our decision on the merits in this case is consistent with the supreme *1337 court's decision in Mead and thus deny rehearing as to the merits.
Appellee has also moved for rehearing, but only as to our reversal of the award of attorney's fees. We were incorrect in saying in our opinion that there was no transcript of the fee hearing. There was a transcript, which we have had the opportunity to review. Upon a review of the transcript, we adhere to our original decision as to the amount of the fees awarded. In our opinion, the award of more than $60,000 in attorney's fees to foreclose a $100 lien is simply against the "manifest justice of the cause." Miller v. First American Bank & Trust, 607 So.2d 483 (Fla. 4th DCA 1992). This is made even more apparent to us by reason of the failure of the trial court to adjust the fee request in any way; the amount sought is the amount of the award, in spite of obvious duplication of attorney work, unnecessary time billings, and no evidence suggesting that this is the kind of "test" case involved in State Farm Fire & Casualty Co. v. Palma, 555 So.2d 836 (Fla. 1990).
As our decision in Miller makes clear, in the area of attorney's fees courts have special responsibilities to the public to supervise the amount of awards. Notwithstanding our ordinary deference to the factual findings of trial judges, we are obligated to insure as part of the review process that an award of fees has both the appearance and substance of justice. Here we are unable to say that this one does.
All motions for rehearing are denied; our stay is dissolved; and the matter is returned to the trial court for further proceedings consistent with our decision.
SHAHOOD, J., concurs.
GUNTHER, C.J., concurs in part and dissents in part with opinion.
GUNTHER, Chief Judge, concurring in part, dissenting in part:
I concur in the majority's denial of appellants' motion for rehearing as to the merits of the case.
Respectfully, however, I disagree with the majority's denial of appellee's motion for rehearing which pertains to the reversal of appellee's award of attorney's fees. I do so because I agree with the sound reasoning and legal analysis set forth in the late Judge Letts' opinion in this case.
In particular, I adopt his view that "though I agree the numbers of hours allegedly expended was far too high in relation to the substance of the controversy, I must leave it to the trier of fact, with the help of highly skilled expert witnesses, to make that determination and not substitute my judgment for his." Accordingly, I would grant appellee's motion for rehearing.
NOTES
[1] The mere fact that the association could make an emergency special assessment in order to pay, e.g., for lawn maintenance, does not necessarily mean that the unit owners lack a remedy against the offending directors or attorneys whose actions led to the necessity for the assessment. We, of course, express no opinion on that subject.
[2] We have not attempted to add up the numerous entries labeled "trial preparation"  no trial was ever held  or, for that matter, the many hours spent in discovery or related motion practice.
[3] We note that these same lawyers for this same association have already been paid a fee of $45,000 for their services in fore-closing this same assessment against another different unit owner. We could not bear to know in how many test cases these attorneys are entitled to use Palma as justification for a fee disproportionate to the cause.
[4] The figure is $200, not $100 because two units are involved.