IN THE DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FIFTH DISTRICT

NOT FINAL UNTIL TIME EXPIRES TO
FILE MOTION FOR REHEARING AND
DISPOSITION THEREOF IF FILED

BAKER FAMILY CHIROPRACTIC, LLC A/A/O HAHN DINH,

    Appellant,

v.

    Case No.  5D21-3137
    LT Case No. 2019-37344-COCI

LIBERTY MUTUAL INSURANCE COMPANY,

    Appellee.

_____/

Opinion filed February 6, 2023

Appeal from the County Court
for Volusia County,
Belle B. Schumann, Judge.

Chad A. Barr, Dalton Gray and
William S. England, of Chad Barr Law,
Altamonte Springs, for Appellant.

Hinda Klein, of Conroy Simberg,
Hollywood, for Appellee.

EDWARDS, J.

    The underlying litigation and this second appeal to the Court began as

a dispute over how to calculate the amount of interest owed by an insurer for

failing to timely pay a health care provider who treated an insured pursuant to a Personal Injury Protection ("PIP") policy issued by Appellee, Liberty Mutual Insurance. The net difference between the interest calculated and paid by Liberty Mutual and the amount claimed by the health care provider, Baker Family Chiropractic, LLC, ("Baker Chiro"), Appellant, was $1.48. Liberty Mutual was insistent that its method of calculating interest was correct under the relevant PIP statutes, while Baker Chiro was adamant that a different methodology was compelled.

Baker Chiro won that dispute at trial, phase one of the litigation. Liberty Mutual appealed, hoping that this Court would agree with its position and reverse the $1.48 judgment. However, Liberty Mutual dismissed its appeal shortly after Baker Chiro's answer brief was filed, effectively conceding that it had lost the dispute. This Court conditionally granted Baker Chiro's motion for appellate attorney's fees and remanded the case to county court.

On remand, the parties litigated over Baker Chiro's entitlement to fees and the amount of fees that might be awarded. In this second phase of litigation, the trial court ruled that Baker Chiro was not entitled to any attorney's fees at all. This appeal timely follows. For the reasons explained below, we hold that the trial court erred. We remand this case for the award

2

of reasonable attorney's fees to which Baker Chiro may be entitled under the circumstances and based on the applicable criteria.

<u>The Arena of PIP Litigation</u>

PIP insurance, required by Florida's No-Fault statutes, is intended to "provide swift, virtually automatic payment" of benefits to those injured in auto accidents. *Ivey v. Allstate Ins.*, 774 So. 2d 679, 683 (Fla. 2000) (internal quotations omitted). When the No-Fault and PIP statutes were initially enacted, the hope was that replacing the system of fault-based auto accident injury litigation would "obviate the necessity to bring a cause of action in many cases, thereby reducing court congestion and delay." *Lasky v. State Farm Ins.*, 296 So. 2d 9, 17 (Fla. 1974).

As a quick search on any legal research platform will reveal, over the years, there have been numerous PIP disputes litigated and appealed regarding a wide variety of issues between insurers, on the one side, and their insureds, or assignees who have provided health care to the insureds, on the other side.[1] Many of those lawsuits, including some class actions, involved some aspect of seeking or calculating interest on overdue medical

---

[1] In 2016, the Florida Supreme Court noted that PIP litigation in county courts was consuming an ever-increasing amount of judicial time and resources. *In re Certification of Need for Additional Judges*, 206 So. 3d 22, 33 (Fla. 2016).

3

benefit payments.[2] Over the years, the legislature has modified the No-Fault statutes, often leading to additional litigation as the new provisions were implemented, became the subject of disputes, and then were judicially interpreted. *State Farm v. Nichols*, 932 So. 2d 1067, 1076 (Fla. 2006).  The Florida Legislature's dissatisfaction with the overall scheme was evident in 2021 when SB-54, which essentially eliminated No-Fault and PIP with a return to fault-based tort cases, passed both houses; however, it was vetoed by the governor. Veto of Fla. SB 54 (2021) (letter from Gov. Desantis to Sec'y of State Laurel Lee, June 29, 2021), https://www.flgov.com/wp-content/uploads/2021/06/SB-54-Transmittal-Letter.pdf.

"Florida courts have seen a number of these cases in personal injury protection litigation where litigants go at it, hammer and tongs, over trifling amounts." *Pan Am Diagnostic Servs*., 347 So. 3d at 12 (Klingensmith, J., concurring).  One might wonder why parties would sue or defend over *de minimis* amounts. Could it be that given the pervasiveness of PIP insurance and the repetitive nature of some PIP issues, the small amounts of money in

---

[2] *See, e.g., Liberty Mut. Ins. Co. v. Pan Am Diagnostic Servs.*, 347 So. 3d 7 (Fla. 4th DCA 2022); *Precision Diagnostic, Inc. v. Progressive Am. Ins.* 330 So. 3d 32 (Fla. 4th DCA 2021); *Cannarella v. Allstate Indem. Co.*, 809 So. 2d 73 (Fla. 2d DCA 2002); *United Auto. Ins. v. Stat Tech., Inc.*, 787 So. 2d 920 (Fla. 3d DCA 2001); *Orion Ins. Co. v. Magnetic Imaging Sys.*, 696 So. 2d 475 (Fla. 3d DCA 1997); *U.S. Sec. Ins. v. Magnetic Imaging Sys.*, 678 So. 2d 872 (Fla. 3d DCA 1996).

individual claims collectively become large enough for insurance companies to make the business judgment to litigate and appeal should they lose?[3] It is clear that insureds or assignees of insureds are willing to engage insurers in litigation over small amounts of money because of the statutes providing for payment of attorney's fees if they prevail. *Precision Diagnostic, Inc.*, 330 So. 3d at 35. Those fee awards are often substantial and frequently disproportionate to the underlying amount in controversy.

Payment of the Overdue Claim

Liberty Mutual's insured was injured in an auto accident in late March 2017. He sought and received health care for those injuries from Baker Chiro in early April 2017. As payment for treatment rendered, Baker Chiro accepted an assignment from the insured of his benefits provided by his Liberty Mutual policy. In May 2017, Baker Chiro submitted the assigned claim for PIP benefits to Liberty Mutual which timely and properly paid most of the amounts due under the policy. However, Liberty Mutual admittedly underpaid the PIP benefit amount due to Baker Chiro by $168.00.

---

[3] We note that the calculation method championed below by Liberty Mutual in the instant case is strikingly similar to that litigated and appealed by Progressive Insurance in *Precision Diagnostic, Inc. v. Progressive American Insurance*, 330 So. 3d 32, 33 (Fla. 4th DCA 2021). The Fourth District found Progressive's interest calculation method to be incorrect. *Id.* 33–34.

The $168.00 became overdue under the terms of the PIP policy and section 627.736(4)(b), Florida Statutes (2017), when it had not been paid within 30 days after the initial submission. As provided by section 627.736(10)(a), Baker Chiro sent a statutorily compliant demand letter to Liberty Mutual on March 12, 2019, seeking payment of that overdue claim together with interest, postage, and penalty. Under the governing PIP statute, the insurer had 30 days from receipt of the demand letter within which to pay the overdue claim together with interest and a ten percent penalty. § 627.736(10)(d), Fla. Stat. (2019).

Liberty Mutual waited until day 41, i.e., April 22, 2019, to pay the overdue claim of $168.00 plus the amount it calculated to be due as interest, $16.60. According to the calculation method used by Baker Chiro, the interest should have been $18.08.

<u>First Phase of Litigation Regarding $1.48</u>

Nearly six months later, Baker Chiro filed suit in small claims court seeking the $1.48 in interest and an award of attorney's fees pursuant to sections 627.428, Florida Statutes (2019), and 627.736. Liberty Mutual answered, denying any underpayment of benefits or interest. The parties stipulated during the first phase of litigation in small claims court that the sole issue for the court to resolve was whether the interest due and paid by Liberty

Mutual on April 22, 2019 "was correct and proper under the policy of insurance and Florida Law." There was no dispute about the existence of PIP coverage, the assignment of the insured's contract rights to Baker Chiro, or the reasonableness and necessity of Baker Chiro's treatment.

The parties filed competing motions for summary judgment. In the first phase of this litigation, the trial court granted summary judgment for Baker Chiro and against Liberty Mutual. In its eight-page order, the court agreed with Baker Chiro that the interest rate on overdue claims would be adjusted annually, rejecting Liberty Mutual's lower-paying methodology to calculate interest on a flat rate. It found that Baker Chiro was "owed the $1.48 in prejudgment interest pursuant to 627.736(4)(d), 55.03, 687.01, and the policy of insurance." The trial court also ruled that Baker Chiro was entitled to recover reasonable attorney's fees, and reserved jurisdiction to set the amount at a later date. The amount of fees had not been determined when Liberty Mutual took the first appeal, seeking reversal of the $1.48 judgment.[4]

First Appeal Regarding $1.48

---

[4] At the time the first appeal was commenced, appellate jurisdiction lay with the circuit court. However, during pendency of the appeal, legislation transferred appellate jurisdiction of county court cases, such as this, to district courts of appeal. *See Mallory v. Brinckerhoff*, 312 So. 3d 944 (Fla. 4th DCA 2021).

7

In the first appeal of this case, Liberty Mutual, as appellant, argued in its initial brief that its interpretation of the PIP statutes dictated the methodology of calculating interest that it had employed, at a fixed rate, in paying $16.60 rather than $18.08 on the overdue claim. Its calculation and payment of only $16.60 was intentional. Liberty argued in its initial appellate brief that the judgment for $1.48 should be reversed. Baker Chiro filed its answer brief urging that the trial court's statutory construction calling for an annual adjustment was correct and requesting that the $1.48 judgment be affirmed on appeal.

Shortly after the answer brief was filed, Liberty Mutual filed a notice of voluntary dismissal of its appeal, without sharing its reason for doing so with this Court. On April 21, 2021, this Court accepted the voluntary dismissal and ordered that Baker Chiro's motion for appellate attorney's fees was granted, "contingent upon the lower tribunal determining that Appellee [Baker Chiro] is entitled to attorney's fees pursuant to section 627.428." The case was remanded to the county court for the second phase of litigation.

### Second Phase of Litigation

The remand from this Court was for a determination of Baker Chiro's entitlement to appellate attorney's fees. That portion of the original summary judgment finding Baker Chiro entitled to trial-level fees but not setting an

amount was non-final and not appealable at the time of the first appeal. *Orange Cnty. v. Ferguson,* 290 So. 3d 1031, 1033 (Fla. 5th DCA 2020); *Mills v. Martinez*, 909 So. 2d 340, 342 (Fla. 5th DCA 2005). Thus, it was subject to being revisited. Accordingly, the county court heard argument on entitlement and took evidence regarding the amount of attorney's fees for trial and appeal. Baker Chiro sought $73,810 in attorney's fees for the work done up to the date of the hearing.

As urged by Liberty Mutual, the trial court relied upon the reasoning in a Fourth District case to deny Baker Chiro any fees for trial and appeal. *South Florida Pain & Rehab. of W. Dade v. Infinity Auto Ins. Co.*, 318 So. 3d 6 (Fla. 4th DCA 2021). *South Florida Pain* was decided on the same day that our Court entered its order remanding this case to county court for consideration of Baker Chiro's attorney's fees.

## Standard of Review

Whether Baker Chiro is entitled to an award of reasonable attorney's fees is a matter of statutory interpretation; thus, the standard of review is de novo. *Parker v. Bd. of Trs. of City Pension Fund*, 149 So. 3d 1129, 1132 (Fla. 2014).

## Analysis

9

"Sections 627.730–627.7405 are known as 'Florida Motor Vehicle No-Fault Law.'" *South Florida Pain*, 318 So. 3d at 8.  The dispute between Baker Chiro and Liberty Mutual arose under section 627.736.  PIP benefits are overdue "if not paid within 30 days after the insurer is furnished written notice of the fact of a covered loss and of the amount of same." § 627.736(4)(b), Fla. Stat.  Liberty Mutual underpaid the claim submitted by Baker Chiro by $168; thus, it was overdue after 30 days passed from receipt of the initial claim.[5]

Section 627.736(6)(d) provides that "all overdue payments bear simple interest at the rate established under s. 55.03 [Florida Statutes] or the rate established in the insurance contract, whichever is greater."  The underlying dispute focused on the parties' disagreement over the calculation of interest to which Baker Chiro was entitled under 627.736(6)(d).  Obviously, Baker Chiro was entitled to receive the proper amount of interest on the overdue claim; it was not obligated to accept anything less.

Section 627.736(8) provides in pertinent part: "With respect to **any dispute** under the provisions of ss. 627.730–627.7405 . . . between an

---

[5] The PIP coverage contained in the policy of insurance issued by Liberty Mutual expressly adopted that statutory provision, stating that benefits will be overdue if not paid within that same 30-day period.  It did not set an interest rate for the overdue payment.

10

assignee of an insured's rights and the insurer, the provisions of ss. 627.428 and 768.79 apply, except as provided in subsections (10) and (15)." (emphasis added). Given that the parties' dispute arose under one or more of the above provisions, Baker Chiro would be entitled to recover attorney's fees under 627.428, unless one of the specifically mentioned exceptions applied. The parties agreed that the subsection (15) exception did not apply; therefore, we will focus on subsection (10).

<u>Safe Harbor Provisions</u>

The legislative goal of achieving swift payment of PIP benefits is furthered by the operation of section 627.736(10)(d). That subsection contains two safe harbor provisions for an insurer that timely pays the second time around, after it receives a demand letter seeking payment of a claim that became overdue because it was not paid within 30 days of the insurer's initial receipt of the written claim.

The first safe harbor is one of complete protection from suit. "[N]o action may be brought against the insurer," if within 30 days after receipt of the demand letter it pays (1) the overdue claim, (2) applicable interest, and (3) a penalty of 10 percent of the overdue claim, not to exceed $250. *Id.*[6]

---

[6] The insured or assignee is required to send its statutory demand letter by certified or registered mail and is entitled to recover that postage under

11

Liberty Mutual is not entitled to the absolute protection of the first safe harbor because it was not until the 41st day after receiving the demand letter that it paid the admittedly overdue claim of $168 together with the incorrect amount of interest.

The second safe harbor provided under subsection (10) protects the insurer only, but importantly, from payment of attorney's fees. "The insurer is not obligated to pay **any** attorney's fees if the insurer pays the claim . . . within the time prescribed by this subsection." *Id.* (emphasis added).[7] If Liberty Mutual had paid the $168 and nothing more within 30 days, no attorney's fees would be owed. However, Liberty Mutual is not entitled to the protection of this second safe harbor because it failed to pay the claim, $168, within the 30-day time frame provided by this subsection. It was eleven days late.

By delaying payment until the 41st day after receipt of the demand letter, Liberty Mutual sailed past both safe harbors, leaving it open to suit for the underpaid interest and attorney's fees under section 627.736(10)(d).

_____

627.736(10)(c); it appears that Liberty Mutual did reimburse Baker Chiro for postage.

[7] It is clear from the language used in the first safe harbor provision that "claim" refers only to the past due benefit amount; it does not include interest, penalty, or postage.

12

Because of its failure to make "swift payment," Liberty has no protection under either safe harbor provision of 627.736(10)(d). Moreover, given the insured's assignment of contract rights under the policy and because the parties' dispute was "any dispute under the provisions of ss. 627.730–627.7405," Baker Chiro may recover reasonable attorney's fees under section 627.428. Accordingly, we reverse.

Safe Harbor Bars Fees

By contrast to Liberty Mutual's late payment here, in *South Florida Pain*, the Fourth District reported that "[t]he insurer [Infinity] ultimately paid all of the PIP benefits that the provider was due **in the time allotted under the demand letter and available under the insured's policy**, but it did not pay the penalty and postage pursuant to section 627.736(10)(d)." 318 So. 3d at 7. (emphasis added).

Because Infinity had not paid the 10% penalty and postage, it was not entitled to the absolute protection of the first safe harbor provision. However, because it paid the overdue claim within 30 days of receipt of the demand letter, Infinity was protected from the obligation to pay any attorney's fees by the second safe harbor provision of 627.736(10)(d). *Id.* at 10.

"When the language of the statute is clear and unambiguous and conveys a clear and definite meaning, there is no occasion for resorting to

13

the rules of statutory interpretation and construction; the statute must be given its plain and obvious meaning." *Precision Diagnostic, Inc.*, 330 So. 3d at 34.

The language of subsection (10)(d) could not be clearer. "The insurer is not obligated to pay **any attorney fees** if the insurer pays the claim . . . within the time prescribed by this subsection." § 627.736(10)(d), Fla. Stat. Infinity timely paid the claim within the 30-day demand letter window; thus, it owed no attorney's fees. Period. By applying the safe harbor analysis dictated by that statute, finding the answer to whether recovery of attorney's fees was barred in *South Florida Pain* should have been simple. Had we been faced with the same facts, we would have reached the same conclusion: the provider was not entitled to attorney's fees because that is what the clear language of section 627.736(10)(d) provides, not because we agree with or see the need for the Fourth District's "benefits" analysis.[8]

---

[8] While we do not engage in the "benefits" analysis, we note that with regard to a previous version of the No-Fault statutes that required arbitration; included a prevailing party attorney's fees provision, we and at least one other district held that "a suit for interest due to an allegedly late payment of a claim is a 'claims dispute involving medical benefits,'" for which attorney's fees could be sought. *Superior Ins. v. Libert*, 776 So. 2d 360, 364 (Fla. 5th DCA 2001) (citing *Orion Ins.*, 696 So. 2d at 476 and *U.S. Sec. Ins.*, 678 So. 2d at 872). We note that the term "benefits" is not found in either 627.428 or 627.736(8).

14

With all respect due to our colleagues, there was no need in *South Florida Pain* to engage in the lengthy analysis of cases and other statutes after the Fourth District correctly determined that 627.736(10)(d) meant what it said:  that the insurer was not obligated to pay attorney's fees because it paid the overdue claim within the 30-day demand letter window. 318 So. 3d at 10.  It is unclear why the court in *South Florida Pain* felt compelled to go further.   Given that we agree with the outcome of that case and disagree only with some of the opinion's dicta, the two cases are not in direct conflict.

We cannot say whether we would have reached the same result that the Fourth District did in *Pan Am Diagnostic Services*, because important facts are omitted from its published opinion.  That case dealt with Liberty Mutual's underpayment by fourteen cents of interest on an overdue claim. 347 So. 3d at 8.  However, the opinion does not mention whether Liberty Mutual paid the overdue claim within 30 days of having received the statutory demand letter.  If it did pay the overdue claim within that 30-day demand letter window, it would have been protected from owing any attorney's fees under the second safe harbor provision of section 627.736(d), even if it did miscalculate the amount of interest owed.  On the other hand, if Liberty Mutual missed the 30-day window, as it did in our case, and late-paid the overdue claim, it would have sailed past the safe harbors and once again failed to meet its obligation to swiftly pay the PIP benefits.  As we do not have

15

the information, we cannot agree or disagree with the outcome. However, given the clear language of section 627.736(8) and (10)(d), we would employ the plain and obvious meaning of those subsections without the need or justification to do otherwise or go elsewhere in search of the answer.

De Minimis Analysis

We are aware of several opinions in which the pursuit of relatively small amounts of interest, postage, or the 10% penalty is brought "painfully for no other justification than the award of attorney's fees." *See, e.g., Pan Am Diagnostic Servs.*, 347 So. 3d at 13 (quoting *Precision Diagnostic*, 330 So. 3d at 35). We fully agree that as a matter of policy, lawsuits should typically not be filed or defended over amounts as trivial as $4.17 or $1.48 or 14 cents. Some courts have suggested that PIP appeals should be dismissed solely because the amount in controversy is so small. "The legal maxim 'de minimis non curat lex,' simply means the law does not care for small things." *Precision Diagnostic*, 330 So. 3d at 35 (quoting *Loeffler v. Roe*, 69 So. 2d 331, 338 (Fla. 1953)).[9] Perhaps. But relying on that maxim ignores the purpose for which insurance litigation attorney's fees statutes were enacted. "The need for fee and cost reimbursement in the realm of insurance

16

litigation is deeply rooted in public policy." *Johnson v. Omega Ins. Co.*, 200 So. 3d 1207, 1215 (Fla. 2016). "It is clear to us that the purpose of this provision [section 627.428] is to level the playing field so that the economic power of insurance companies is not so overwhelming that injustice may be encouraged because people will not have the necessary means to seek redress in courts." *Ivey*, 774 So. 2d at 684. "This is especially true in small cases such as this one, where a percentage formula alone would not provide the incentive for a lawyer to undertake a case involving the potential commitment of many hours and substantial costs." *Forthuber v. First Liberty Ins.*, 229 So. 3d 896, 900 (Fla. 5th DCA 2017).

"[T]he purpose of section 627.428 is to penalize an insurance company for wrongfully causing its insured to resort to litigation in order to resolve a conflict with its insurer when it was within the [insurance] company's power to resolve it." *First Fla. Auto & Home Ins. v. Myrick*, 969 So. 2d 1121, 1124 (Fla. 2d DCA 2007).

---

[9] It is difficult to imagine wide-spread application of that doctrine in or its adoption as the motto for Small Claims Court, where this dispute began.

We are mindful that a lawsuit regarding a seemingly small amount, just like any other fight, requires two participants. A noteworthy example of waging war over a relatively small PIP claim is *State Farm Fire & Cas. Co. v. Palma*, 555 So. 2d 836 (Fla. 1990) ("Palma III"). That suit and its three appeals revolved around what was then a relatively new diagnostic tool, the thermograph. *Id*. at 836. The thermograph detects temperature differences on the human body and can generate a thermogram which is a color-coded diagram of those differing temperatures. Its diagnostic value for identifying musculoskeletal injuries and nerve root impingement was debated. *Id*. at 837. State Farm made the decision that it was not going to pay any PIP claims for thermographic examination, taking the position that it "did not constitute a necessary medical service." *Id*. at 836. This forced its insured to sue State Farm seeking PIP reimbursement for her thermogram. State Farm counterclaimed for declaratory judgment to have thermography excluded from PIP coverage as not being necessary medical treatment. *Id*. at 837.

State Farm initially prevailed at the six-day trial at which a dozen medical experts testified. *Id*. The trial court found that thermography was not a necessary medical service. *Id*. However, the Fourth District reversed, finding that the trial court's definition of "necessary medical service was too

18

restrictive," and remanded for entry of judgment against State Farm and for an award of attorney's fees. *Palma v. State Farm Fire & Cas.*, 489 So. 2d 147, 150 (Fla. 4th DCA 1986) ("Palma I"). On remand, the trial court heard from three attorney's fees experts and then awarded the insured $253,500 in attorney's fees based on 650 hours at $150 per hour with a 2.6 multiplier. *Palma III*, 555 So. 2d at 837–38.

State Farm then appealed the award of attorney's fees and lost in the Fourth District. *State Farm Fire & Cas. v. Palma*, 524 So. 2d 1035, 1036 (Fla. 4th DCA 1988) ("Palma II"). Undeterred, State Farm then pursued *Palma III* in the Florida Supreme Court which noted:

> It appears that State Farm decided to 'go to the mat' over the bill for thermographic studies because, apparently, it is a diagnostic tool which is becoming more widely used …. Having chosen to stand and fight over this charge, State Farm, of course, made a business judgment for which it should have known a day of reckoning would come should it lose in the end.

*Palma III*, 555 So. 2d. at 837.

The Supreme Court referred to the Fourth District's opinion, *Palma II,* which recognized "the great disparity between the monetary sum recovered in the case and the amount of the attorney's fees." *Id*. at 838 (quoting *Palma II,* 524 So. 2d at 1036). The Supreme Court included the Fourth District's comments, that:

19

> *[T]he real issue was not an incidental medical bill. This record is clear that State Farm hoped to prove a point in this case regarding bills for this medical procedure that would avail it in other cases nationally. So the stakes were high and the issue became complex, justifying the legal effort.*

*Id*. at 838 (quoting *Palma II*, 524 So. 2d at 1036–37) (emphasis added by supreme court.)

In *Precision Diagnostic*, Progressive mistakenly underpaid a claim by $400 and did not correct its mistake for more than three years. 330 So. 3d at 33. Thereafter, Progressive underpaid the interest owed by $4.17 based upon its intentional, but statutorily incorrect method of calculation, the same method championed by Liberty Mutual in the case at hand. *Id.* at 33–34. In *Magnetic Imaging*, the assignee health care provider brought a class action, alleging that Prudential Insurance Company "regularly failed to pay interest on late-paid PIP benefits as required by sections 627.736(4)(b) and (c)." 847 So. 2d at 988.

In our case, it is not clear who started the fight over $1.48 of interest; however, it is clear that both Baker Chiro and Liberty Mutual chose to continue the battle. Liberty Mutual defended its intentional method of interest calculation through trial and through a partial appeal. We cannot tell from the record before us whether there were national implications to this dispute, if it was important to Liberty Mutual on a state-wide basis here in Florida, or

whether it was trying to make a point with a group of PIP attorneys. As in *Palma*, it is clear that Liberty Mutual was not fighting over only $1.48. Absent the opportunity for recovering attorney's fees, Baker Chiro and its attorney would not likely have continued the fight either.

*De minimis non curat lex* is a subjective philosophical statement. Under what circumstances, at what amount, and for what benefits or penalties are the damages simply too small to deserve judicial consideration and recovery of attorney's fees? *See Precision Diagnostic*, 330 So. 3d at 35. While there may be other occasions for courts to decide that, here the legislature has made that decision for us by its enactment of sections 627.736(8) and (10)(d) which permits an award of attorney's fees for "any dispute" outside the protection of the two safe harbors.

While courts should not encourage insureds or assignees to sue just to obtain large fees, might insurers be encouraged to be more bold or aggressive, to the point of "injustice" referenced in *Ivey*, when they decide to "make a point" if we prohibit all such suits? If the legislature did not think that the club of attorney's fees would encourage insurers to strictly comply with the No-Fault laws, it would never have made that tool available. Under section 627.428, "the focus is outcome-oriented. If a dispute arises between an insurer and an insured, and judgment is entered in favor of the insured,

21

he or she is entitled to attorney's fees." *Ivey*, 774 So. 2d at 684. The same is true for 627.736(8) and (10).

While we are free to philosophically disagree with the Legislature as to the wisdom or efficacy of awarding attorney's fees in every PIP dispute, we are not free to ignore or rewrite the aforementioned statutory provisions. Furthermore, the Legislature has revised the insurance-related statutory attorney's fees provisions in the past and can do so again if it sees the need.[10]

For the reasons explained above, we reverse and remand. The county court shall determine the amount of attorney's fees that should be awarded to Baker Chiro and against Liberty Mutual. It shall take evidence and consider those matters set forth in section 627.736(8) and all relevant factors

---

[10] Entitlement to attorney's fees in the PIP arena has changed repeatedly. No-Fault initially provided for attorney's fees to the prevailing party; then it became a one-way street where only prevailing insureds could recover fees. *See Magnetic Imaging Sys. v. Prudential Prop. & Cas. Ins. Co.*, 847 So. 2d 987, 989 (Fla. 3d DCA 2003); *Forthuber*, 229 So. 3d at 899. The current version of §627.736(8) explicitly permits attorney fee awards to assignees of the insureds. The Legislature implemented other changes to recognize and permit recovery by either side based upon proposals for settlement following *Nichols,* 932 So. 2d 1067 (Fla. 2006). In an apparent attempt to reduce the remarkably high amount of individual attorney's fees awards, in 2012, the Legislature passed HB 119—Motor Vehicle Personal Injury Protection Insurance—prohibiting the award of a contingency fee multiplier in PIP suits. *See Joyce v. Federated Nat'l Ins.*, 228 So. 3d 1122, 1140 (Fla. 2017).

discussed in controlling case law, including but not limited to, the result obtained, the certainty of payment, and whether the litigation was a test case. The amount of attorney's fees may be nominal or substantial but must in all respects be reasonable based on the unique circumstances of this case. Given the basis for our decision, we need not address the other issues raised on appeal.

REVERSED and REMANDED.

EVANDER, J., specially concurring, with opinion.

MAKAR, J., concurring, with opinion.

EVANDER, J., specially concurring.

Baker Chiro's demand letter for the due and owing $168 included a demand for interest but (understandably) did not specify an exact amount of claimed interest. Approximately six months after Liberty issued payment for the $168 balance and $16.60 of interest, Baker Chiro filed its lawsuit. If that lawsuit was filed without first making a request for the $1.48 and the ensuing litigation was the result of Baker Chiro's insistence on the payment of attorney's fees and costs incurred in the preparation and filing of the lawsuit, then I would suggest that, on remand, the trial court would likely be well within its discretion to award only nominal attorney's fees to Baker Chiro. After all, if Liberty, upon receiving a presuit demand, would have been more than willing to make Baker whole, it is difficult to see how the filing of what would be an unnecessary lawsuit would constitute the incurring of "reasonable" attorney's fees. Furthermore, courts should not adopt a policy that could encourage attorneys to file lawsuits for *de minimis* amounts where the clear and obvious purpose of the lawsuit was to seek a substantial award of attorney's fees.

24

On the other hand, if Liberty rejected a reasonable presuit demand and decided to "go to the mat" over a $1.48 amount, it would be entirely appropriate for Liberty to be required to pay a significant amount of attorney's fees in this case. To do otherwise could encourage insurance companies, as a matter of course, to withhold due and owing payments of amounts declared by courts to be *de minimis*.

As pointed out in the majority opinion, the record before us does not establish who truly started this fight over $1.48 of interest. Thus, I agree that remand is required even though doing so will result in the continuation of this unseemly battle.

MAKAR, J., concurring with opinion.

I fully concur in Judge Edwards' opinion, which is both thorough and thoughtful given the complicated facts and procedural posture of this case. I also agree with Judge Evander's concurrence.

That said, I favor the Fourth District's view that "the statutory entitlement to interest on overdue PIP benefits is not in and of itself a PIP benefit for which attorney's fees are payable under section 627.736(8)." *Liberty Mut. Ins. Co. v. Pan Am Diagnostic Servs., Inc.*, 347 So. 3d 7, 10 (Fla. 4th DCA 2022). In that case, the Fourth District stated that "a dispute over whether interest is due or paid in the correct amount is not a dispute as to benefits payable for *medical, surgical, funeral, and disability insurance benefits*. Thus, litigation over the payment of interest due on PIP benefits does not trigger entitlement to attorney's fees for the claimant." *Id.* (emphasis in original); *see also S. Fla. Pain & Rehab. of W. Dade v. Infinity Auto Ins. Co.*, 318 So. 3d 6, 8–9 (Fla. 4th DCA 2021).

What distinguishes this case from *Pan Am Diagnostic Services* is the apparent fumbling of the ball by the insurer in not timely paying benefits due and pursuing but dismissing its appeal of the $1.48 judgment, the net effect

26

of which is to expose itself to a potential attorneys' fees judgment for litigation about the method by which interest is calculated.

As to the de minimis doctrine, which appears to have played no role in the parties' litigation, I am in accord with Chief Judge Klingensmith's concurrence in *Pan Am Diagnostic Services*, that cases such as this one, involving meaningless amounts of interest, could be subject to dismissal based on the principle that scarce judicial resources should not be wasted on trifling matters. 347 So. 3d at 11–13 (Klingensmith, C.J., concurring specially). As in *Pan Am Diagnostic Services*, the issue was not raised below, perhaps because the insurer desired to litigate the issue due to its potential impact in the many pending cases in the PIP system.

Finally, the Legislature may wish to clarify the relevant statutes to make it unequivocally clear whether attorneys' fees are available in disputes over interest under the PIP statutes; doing so would relieve the substantial and unnecessary burden placed on the judiciary due to cases such as this one.